State v. Richards.

STATE *v.* JEROME E. RICHARDS, Clerk, *et al.*

(*Jackson.*   April Term, 1908.)

1.  **COSTS.** **Retaxation must be in court determining the suit.**
The taxation of costs is an incident to the suit, and the jurisdiction of adjusting and correcting the taxation belongs to the court which determines the suit; and where the taxation is erroneous, the costs may be retaxed by such court at the instance and upon the motion of the party aggrieved. (*Post, pp.* 488-491.)

Cases cited and approved:   Whitesides v. Rayle, 3 Humph., 265; Ross v. McCarty, 3 Hum., 169; Clark v. Stull, 1 Shannon's Cases, 60; State v. Goodbar, 8 Lea, 451; Arnold v. State, 96 Tenn., 84; Troutt v. Railroad, 97 Tenn., 364.

2.  **SAME.** **Retaxation of criminal costs cannot be made in chancery.**
Under our statutes (Shannon's Code, secs. 673, 4954, 7593, 7594, 7598), committing the examination and certification of bills of criminal costs in the criminal or circuit court to the district attorney and judge of that court in the first instance, with a statutory power lodged in the comptroller of the State and judge of the county court to review and correct such bills of cost so certified before payment, with ample statutory remedy for the correction and retaxation of costs that have been improperly certified, it would seem clear that no such jurisdiction should be exercised by the chancery court to correct and retax such bills of costs. (*Post, pp.* 491, 492.)

Code cited and construed:   Secs. 673, 4954, 7593, 7594, 7598 (S.); secs. 586, 3937, 6442, 6443, 6447 (M. & V.); secs. 528, 3212, 5569, 5570, 5571 (T. & S. and 1858).

3. **SAME. Retaxation of costs after payment and at a subsequent term.**

Costs improperly taxed and paid may be retaxed and corrected and caused to be refunded, even at a subsequent term of the court.   (*Post, p.* 492.)

Case cited and approved:   Williams v. Henderson, 1 Ov., 424.

4. **SAME. Statute authorizing revenue agents to sue for fees illegally collected does not confer jurisdiction on chancery court.**

The statute (Acts 1903, ch. 258, sec. 80) authorizing the State revenue agents appointed by the comptroller to sue, "by motion or otherwise," delinquent revenue collectors or officers and to sue for costs and fees wrongfully certified, received, disbursed or retained by officers, does not confer any new jurisdiction on the chancery court, but only confers on said revenue agents the power to sue, by motion or otherwise, to recover delinquent revenue, and to recover costs illegally collected.   (*Post, pp.* 492-493.)

Acts cited and construed:   Acts 1903, ch. 258, sec. 80.

5. **SAME. No chancery jurisdiction as to costs illegally taxed and collected in criminal court, for mistake or fraud, or to prevent multiplicity of suits.**

Since the criminal court is clothed with exclusive jurisdiction to retax costs in cases tried by it, and to pronounce judgment against the clerk and others for costs improperly or illegally taxed and collected, the chancery court will not assume jurisdiction of a suit by the State for the recovery of costs illegally collected by the clerk of the criminal court on the ground of mistake or fraud, or to prevent a multiplicity of suits.   (*Post, p.* 493, 494.)

6. **SAME. No chancery jurisdiction to prevent multiplicity of suits where test cases may be made for retaxation of costs in criminal court.**

Where the question of the illegality of costs taxed and collected in the criminal court may be settled by a motion to correct and

State v. Richards.

retax the taxation of costs in a few cases in such court, chancery will not take jurisdiction to prevent a multiplicity of suits. (*Post, p.* 494.)

7. **SAME.** Proper practice is to file petition in criminal court for recovery of costs illegally collected from the State, when.

.Where the State seeks to recover of the clerk of the criminal court and his sureties costs illegally collected by the clerk, the proper practice would be to file a petition in the criminal court under the statute (Acts 1903, ch. 258, sec. 80), for an account or retaxation of all costs alleged to have been illegally collected. (*Post, p.* 494.)

.Acts cited and construed: Acts 1903, ch. 258, sec. 80.

8. **SAME.** Same. Such petition may embrace question as to clerk's payment of fines and fees to county trustee instead of State comptroller.

The question of the liability of the clerk of the criminal court for fines, costs, and the district attorney's fees collected and paid to the county trustee instead of the comptroller of the State should be submitted to the criminal court in which they accrued and might be embraced in any petition which the State might see proper to file in the criminal court for the retaxation of the costs involved therein. (*Post, pp.* 494, 495.)

---

### FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County.—F. H. HEISKELL, Chancellor.

ATTORNEY-GENERAL CATES and CARROLL & McKELLAR, for State.

FITZHUGH, BIGGS & FITZHUGH and GREER & GREER, for defendants.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

The object of this bill is to recover of the defendant, as clerk of the criminal court of Shelby county, and his official bondsmen, moneys alleged to have been illegally collected by said clerk from the State of Tennessee. It is charged in the bill that said Richards is indebted to the State of Tennessee in the sum of $34,703.04, whereof $32,066.79 had been collected by him from the comptroller of the State upon illegal bills of costs, and that $2,636.25 is due from him on account of State taxes, fines, and attorney-general fees which had been collected by him and not covered into the treasury of the State. It was further alleged: That the illegal cost bills covered a period extending from the January term, 1903, to and including the January term, 1906, in all nine terms of the criminal court of Shelby county, and that of the amount collected by defendant Richards on account of illegal cost bills, $25,811, had been received by him where no valid judgment for costs therefor had been rendered against the State or return of *nulla bona* as required by law, although he, the said Richards, presented certificates to the comptroller showing that such judgments and *nulla bona* returns had been made.

That, in order to validate said cost bills, the defendant, after he had collected the amount thereof as above set out, and at the September term, 1906, of said court, procured the entry in said court of *nunc pro tunc*

orders or judgments, and thereby sought at said term of court to have judgment entered against the State for the amount of said bills of costs, when, in fact, no judgments had theretofore been entered so that said *nunc pro tunc* judgments were void.

That during the period covered by the nine terms of court referred to the defendant Richards collected and received the sum of $11,112.10 in felony cases in which the State was not liable for costs in any event, and that he collected $1,696.90 double costs in the same cases.

That the aforesaid sums were obtained from the State of Tennessee by the defendant Richards upon forwarding to the comptroller of the State bills of costs purporting to be properly audited by the judge and attorney-general, under and within the statutory law, whereby it is made the duty of said judge and attorney-general to take the cost bills made out and to certify to the correctness after having examined, inspected, and audited the same, and the complainant avers that the aforesaid sum of $25,811.60 was paid by the comptroller of the State to said clerk upon the faith of the certificate of said officials and upon itemized cost bills made up as the law requires and upon a full reliance upon the fact that these cost, bills were in all respects regular. That the items which appeared thereon were proper, and that there had been valid judgments taken in order to justify the certification of the said cost bills to the

comptroller from which to issue his warrants upon the treasury of the State, and complainant avers that, notwithstanding the aforesaid cost bills purporting to have been examined and audited and certified to, they were not based upon a valid judgment for costs against the State of Tennessee; for no valid judgment was ever taken upon an adjudication of insolvency or return of *nulla bona* as the basis of any one of the cost bills collected under the false certificates of the attorney-general and criminal judge. It was also alleged that the said Jerome E. Richards, as clerk of the criminal court of Shelby county, certified and received from it illegal fees, both in cases where defendants were convicted and where defendants were acquitted under the felony charges in said court; that the amount of said illegal fees so collected by said Richards aggregates the sum of $11,112.10, whereof $3,834 are improper items of charge against the plaintiff in not guilty felonies, and which said amount does not enter into the aforesaid sum of $25,-811.59, but in addition to that amount, with interest thereon, the complainant is entitled to recover of said Jerome E. Richards the further sum of $3,834.60. It is further averred that the said sum of $11,112.10 was collected by the said Richards without rendering any service for which he would have been entitled to make a charge, and the items thereof, in part, consist of fees erroneously charged for "entering on record State motions," "entering on record of State orders," "orders remanding the defendant to jail," "judgments for costs,"

State v. Richards.

"entering judgment against the State for costs," "entering orders to turn over stolen property," "entering orders for State witnesses to report back," "entering orders to reset cases for trial," "entering orders continuing cases," no one of which items was the defendant Richards entitled to receive, for the very obvious reason that the record books of said court failed to show that proper entries were made, which is a condition prerequisite to the right of defendant to receive costs for the State of Tennessee, the plaintiff herein, and that the plaintiff is therefore entitled to have and recover of the said Richards, not only the aforesaid sum of $25,811.59, but the additional sum of $3,834.60. The complainant further avers that, in addition to the items charged for in the cost bills embracing what purports to be the aforesaid entries set forth in the preceding part of this paragraph, the defendant has charged illegal fees for copying indictments on the records and issuing subpoenas for witnesses, when, under the law, he was not required to issue the same, and that the defendant Richards has charged and collected other fees which he was not entitled to, all of which will be shown on the hearing hereof as a matter of record, not only of the criminal court of Shelby county, Tennessee, but of the comptroller of the State of Tennessee.

The complainant further avers that, in addition to the aforesaid sums, the defendant Jerome Richards is further indebted to the State in an amount aggregating many hundreds of dollars, the precise amount of which plaintiff is not able to state, because he has certified

to and collected costs for himself and others wherein the defendants were acquitted of felony charges in cases other than cases of homicide, rape, robbery, burglary, arson, embezzlement, incest, bigamy, larceny, and assault with intent to commit murder; the State not being liable for costs in such cases.

It is further charged that the defendant is indebted to the complainant in the sum of $1,696.90 and perhaps in an amount exceeding that sum on bills of cost certified by him, which he had previously collected, and covering also costs in cases where several defendants were jointly indicted in said court and no severance had as to the individual defendants, and while, under the law, he was entitled to certify and collect only one cost bill, he wrongfully certified and was paid a cost bill for each one of the individual defendants jointly indicted. The prayer of the bill is that:

"The court adjudge and decree that the *nunc pro tunc* judgments ordered to be entered by the judge of the criminal court of Shelby county, Tennessee, on the — day of September, 1906, by which it was sought to then take judgment over against the State for costs which accrued in cases of felony convictions, be declared void and set aside and for nothing held; that the court decree that the defendant Richards has collected of the complainant illegal and improper fees, and fees to which he was not entitled, to the amount of $32,066.70; and that the court also decree that the defendant Richards has collected, or should have collected, State tax, State

fines, and attorney-general fees, which amount to $2,-636.25, and which sums have not been paid to the complainant, and that judgment be rendered against the defendant and the United States Fidelity & Guaranty Company, surety, for the sum of $15,000, the amount of the bond given by him as required by law."

On June 11, 1907, a demurrer was filed to the original bill, which was sustained by the chancellor as to all the demands made by the complainant, excepting the sum of $2,636.25 sought to be recovered by the State on account of taxes, fines, and attorney-general fees, and, as to this latter item, the demurrer was overruled.

On August 31, 1907, the State was permitted to file an amended bill wherein the allegations of the original bill were reiterated and charges of fraud in the certification of said bills of costs were made with more particularity. The amended bill also exhibited transcripts of the bills of costs and other records illustrating the allegations of the amended bill. The demurrer to the original bill was refiled to the amended bill and was by the chancellor sustained except as to that portion of the bill charging an indebtedness of $2,636.25 for State tax, fines, and attorney-general's fees already mentioned. Defendants thereupon filed an answer to that portion of the bill reserved by the chancellor showing that the items charged consisted of fines and costs which had been paid or worked out by prisoners who had been sent to the county workhouse as provided by law. It was also averred in said answer that these fines and costs, when

collected by the superintendent of the county workhouse, were paid over to the clerk of the criminal court, who, in turn, paid them over to the county trustee upon receivable warrants of the judge of the county court. An exhibit was filed with the answer showing the sum of $2,332.25 as the total amount of fines and costs so collected. The answer denied any indebtedness to the State on account of any of said items, but averred that said amounts, excepting certain items therein enumerated, had been paid over to the trustee of Shelby county, Tennessee, upon orders of the chairman of the county court, from time to time from the 1st day of September, 1902, until the 30th day of June, 1906. Defendants also filed as Exhibit C a certificate and receipt duly signed by the chairman of the county court and the county trustee showing that the said amount of $2,332.25 had been paid over to the county, excepting certain small items aggregating about $250, which were fully explained in the answer. On the hearing the chancellor pronounced a decree on the bill and answer against the defendants for the sum of $2,332.25, interest and penalties. The cause is before this court on the cross-appeals of the State and defendant. The State appealed from the action of the chancellor in sustaining the demurrer to the original and amended bills, and the defendants appealed from the decree of the chancellor wherein they were adjudged liable for the payment of $2,332.25 on account of State fines, costs, etc., collected. We shall first notice the assignments of error filed on behalf of the State

to the action of the chancellor in sustaining the demurrer to the original and amended bills. The grounds of the demurrer are thus summarized on the brief of learned counsel for the defendant:

"(1)   Because said bill does not show that any effort was made in the suits wherein the improper cost bills were collected to have the same retaxed; and only in the court having original jurisdiction and cognizance of these matters was any right ever given to the complainant to collect or recover any of said illegal fees.

"(2)   Because the said bill on its face shows that the amounts now claimed against Richards in the present suit were adjudged to be due him in the criminal court of Shelby county, Tennessee, and said adjudication having been made in said court, and no motion having been made to retax said costs as provided by statute and no appeal having been taken therefrom, the same cannot be reopened in another forum, and the said cost bills retaxed therein.

"(3)   Because it appears from the face of said bill that all the costs collected by the said Richards, and which are sought to be recovered in this cause, were paid to him upon certificates of the attorney-general and judge of the criminal court wherein said cases were tried, and after said cost bills had been examined and certified as required by law; and it is not averred in said bill that the comptroller did not pay out said money to the said Richards upon said certificates.

"(4)   Because the comptroller of the State of Tenn-

essee by law is made the judge of the correctness of all cost bills, and his decision upon the same is final, and not subject to be reviewed by the courts.

"(5) And, for further ground of demurrer, defendants State that this court has no jurisdiction to correct or pass upon judgments *nunc pro tunc* returned by a court of co-ordinate jurisdiction, where no allegation of fraud in the procurement of said judgment is made in the bill.

"(6) Because the allegations in said bill are vague, indefinite, and uncertain in their nature, and insufficient to justify their specific recovery against the defendants.

"(7) Because it is not shown in said bill wherein and how judgment in said cases against the State of Tennessee were not valid, nor wherein nor how the attorney-general and the criminal judge certified false statements and had issued false certificates and in what respect the said certificates were false.

"(8) Because it appears from the face of said bill that all such amounts were collected from the State of Tennessee from proceedings in another court and in a manner pointed out by statute, and it does not appear that the State of Tennessee, which is a party to said suit, has ever by motion to retax the costs in said causes or otherwise, in said court, undertaken to correct any improper cost bills which may have been collected by the said Richards or to have the same corrected."

The first question to be determined on the assignments

of the demurrer is in respect of the jurisdiction of the chancery court to entertain the present bill. The theory of the demurrer is that the present bill is brought for the retaxation of costs that were improperly and illegally taxed against the State by the attorney-general and judge of the criminal court of Shelby county. It is claimed in the bill that these costs were not properly chargeable against the State, and were improperly paid by the comptroller for the reason, first, that no judgment had been taken against the State for said costs on the return of a *nulla bona* as to the individual defendants. It is further claimed on behalf of the State that a portion of the costs so allowed and paid by the clerk were not a legal charge against the State under the provisions of what is known as the "Jarvis Law." Another reason assigned by the State is that some of these costs had already been collected by the clerk of the criminal court, and some other reasons are assigned why said costs were illegal and not collectible against the State. Our first inquiry is whether the chancery court has jurisdiction to entertain such a bill upon the allegations thus made and to grant the relief prayed. As early as the case of *Whitesides* v. *Rayle,* 3 Humph., 205, such jurisdiction was denied. In that case a bill was filed by Thomas Whitesides and others in the chancery court at Tazewell against Wm. Rayle, praying for the collection of a bill of costs in a suit at law between the defendant and complainants erroneously taxed. The defendant demurred to the bill, and the chancellor sus-

tained the demurrer, and the complainant appealed to this court. The court, in part, said:

"It is possible that a case might exist in which, owing to the wrong or fraud of a party in a suit at law, a court of chancery might be clothed with jurisdiction to investigate, supervise, and correct the taxation of costs. But so summary and so ample is the power of a court of common law over the subject that it is difficult to imagine even the existence of such a case. On the other hand, the rule and law of costs is so different in a court of chancery, and the taxation of them so foreign from the habits, studies, and jurisdiction of that court, that for it to take upon itself their adjustment and supervision would indeed be something novel and strange. Moreover, the taxation of costs in any court is but the incident to a suit in such court. There are the process, subpoenas, orders, rules, etc., and all the materials for the proper adjustment of the matter, and there, and there only, it is peculiarly proper that it should be left. How would or could the chancellor get properly before him all these materials? The thing is impracticable, not to say absurd. On grounds, therefore, the most obvious of public convenience, the mere incidental jurisdiction of correcting and adjusting costs, must be left in the forum which investigates and determines the principal matter, the suit itself. So strongly does this court adhere to this principle that it is a settled rule of practice here in chancery cases not to entertain jurisdiction for

the purpose of correcting the most erroneous judgment on the subject of costs merely."

See, also, *Ross* v. *McCarty*, 3 Humph., 169.

In *State* v. *Goodbar*, 8 Lea, 451, the court said:

"The taxation of costs is an incident to a suit, and the jurisdiction of adjusting and correcting the taxation must be left to the forum which determines the suit. If the taxation be erroneous, the cost may be retaxed at the instance of the party aggrieved."

In *Troutt* v. *Railroad*, 97 Tenn., 364, 37 S. W., 90, it appeared that certain costs had been illegally taxed and allowed in the court below and this court on appeal was asked to correct the same, but it was held that this court was without jurisdiction unless "a motion has been made in the court below to correct the taxation, the opinion of that court had thereon, and the motion and judgment entered of record. The taxation of costs in the court below belongs to that court."

See *Arnold* v. *State*, 96 Tenn., 84, 33 S. W., 723; *Clark* v. *Stull*, 1 Shannon's Cases, 660.

It will be observed that the case of *State* v. *Goodbar* was decided after the passage of the act of 1877, which enlarged the jurisdiction of the chancery court, and yet the rule on this subject announced in *Whitsides* v. *Rayle*, supra, was followed. This line of cases seems to have settled the rule that costs are incident to a suit, and, if illegally or improperly taxed, a motion for correction must be made in the court that had jurisdiction of the suit. This rule would seem to be reinforced when

we consider that the examination and certification of bills of costs in the criminal court is committed in the first instance to the attorney-general and the judge of that court with a statutory power lodged in the comptroller of the State and judge of the county court to review and correct such bills of cost so certified before payment. This matter having been especially committed to the judge and attorney-general of the criminal court, and there being an ample statutory remedy for the correction and retaxation of costs that have been improperly certified, it would seem clear that no such jurisdiction should be exercised by the chancery court.

See Shannon's Code, sections 673, 4954, 7593, 7594, 7598.

It is argued, however, that the costs herein have already been collected, and that the statutory remedy embraced in the sections of the Code just cited refer to the correction of costs by motion for retaxation before they are paid. It is said in reply to that, that the State is bound to avail itself of its statutory remedies within a reasonable time, and it is also argued that, even if costs have been paid, they may be retaxed and corrected and caused to be refunded, even at a subsequent term of the court. This seems to have been held in the case of *Williams' Lessee* v. *Henderson,* 1 Overt., 424.

It is insisted, however, by the attorney-general that the jurisdiction of such a suit may be entertained by the chancery court by virtue of section 80, c. 258, p. 705, Acts 1903. That act provides, among other things, for

the appoinment by the comptroller of three revenue agents for the State, and defines their duties. The particular language of the statute invoked in this case is as follows, viz.:

"They shall have the right to bring suit by motion or otherwise against any delinquent revenue collector or officer in the name of the State, upon order of the comptroller, or upon their own motion, for any State, school, or county revenues collected and not reported by said officials, or any moneys, revenues, costs or fees which have been wrongfully certified, received, disbursed or retained by said official or any moneys or revenues which were due the State or county."

In addition to this special act, it is said on behalf of the State that the bill may be retained under the inherent jurisdiction of the chancery court to correct mistakes of fact or to recover money procured to be paid through fraud of the defendant. The theory of the State is that the bulk of this money was paid by the comptroller of the State under a misapprehension that a judgment had been pronounced against the State on a return of *nulla bona* against the defendants, and, further, that there were items embraced in said bills of cost which had been theretofore paid, and other items for which the State was not liable under the provisions of the Jarvis law. So far as the Act of 1903 is concerned, it does not purport to confer any new jurisdiction on the chancery court. It simply confers upon the revenue commissioners the power to bring suit to recover delin-

quent revenue and to recover costs illegally collected, by
motion or otherwise.   It cannot be supposed that the
legislature intended by the use of the word "otherwise"
to confer a jurisdiction on the chancery court which had
been uniformly denied by the decisions of this court.
Nor is this a case in which the jurisdiction of the chan-
cery court may be invoked on the ground of mistake or
fraud, or to prevent multiplicity of suits.   The remedy
for the correction of these errors, as we have already
held, is in the criminal court, where the suits were pend-
ing, and that court has ample jurisdiction to correct.
these bills of costs for mistake or fraud.   It is not nec-
essary that this acknowledged ground of equity jurisdic-
tion should be invoked in this case, since the criminal
court is clothed with exclusive jurisdiction to retax
costs and to pronounce judgment against the clerk and
others for costs improperly, or illegally taxed and col-
lected.   Nor do we think a bill in equity is necessary to
prevent a multiplicity of suits, since the questions pre-
sented might be settled by motion in a few cases in the
criminal court.

The proper practice would be to file a petition against
the clerk and his sureties in the criminal court, under
section 80, c. 258, p. 705, Acts 1903, for an account of re-
taxation of all costs alleged to have been illegally col-
lected.

We next proceed to notice the assignment of error
filed on behalf of defendants to the action of the chan-
cellor.   The chancellor, as already stated, pronounced

a decree against the defendants for the sum of $2,332.25 for certain State fines, costs and attorney-general's fees. The chancellor held:

"That the defendant Jerome E. Richards collected and paid over to the county trustee, under order of the chairman of the county court, certain sums, aggregating $2,332.25, which had been collected on account of fines, costs and attorney-general's fees which should have been paid over to the comptroller of the State instead of the trustee; that the payment by the clerk to the trustee was made in good faith, and, while the trustee is liable for the amount to the State, the court is of the opinion that the defendant is primarily liable therefor."

We are of opinion that this matter should also have been submitted to the criminal court and may be embraced in any petition which the complainants may see proper to file in the criminal court for the retaxation of the costs involved therein. In a word, the demurrer to the whole bill is sustained for want of jurisdiction in the chancery court to adjudicate the matters presented by the bill. It follows, therefore, that the decree of the chancellor against the clerk and his sureties for the sum of $2,332.50 for certain State fines, costs and attorney-general fees is reversed, and the entire bill will be dismissed, but without prejudice to present all the matters embraced in the bill by petition or motion to the criminal court. The other matters of demurrer are not adjudicated.