The **ORIGINAL FAYETTE COUNTY CIVIC AND WELFARE LEAGUE, INC., et al., Plaintiffs,**

v.

**Buford ELLINGTON, Governor of the State of Tennessee, et al., Defendants.**

**Civ. A. No. C–69–266.**

United States District Court, W. D. Tennessee, W. D.

Feb. 9, 1970.

See also, D.C., 309 F.Supp. 96.

Ratner, Sugarmon, Lucas & Willis, and Russell X. Thompson, Memphis, Tenn., for plaintiffs.

Joe A. Dycus, Cooperating Atty., Memphis, Tenn., American Civil Liber-

ties Union, West Tennessee Chapter, intervening as amicus curiae.

David M. Pack, Atty. Gen., State of Tenn. and Thomas E. Fox, Deputy Atty. Gen., Nashville, Tenn., for Ellington and Pack.

J. P. Matthews, Somerville, Tenn., for Yancy, Burrow and Howse.

J. P. Matthews, and Joe N. Cocke, Somerville, Tenn., for Rhea, Rike, Tapp, Cooksey, Price, Minor, Walters, Fair, Powers, Rosser, Fisher, Rhea, Barnes, Thompson, Shinault, Sanders, Damron, Peaks and Hampton.

Joe N. Cocke, Somerville, Tenn., for Bowling, Luck and Tomlin.

Will Abernathy and Preston Park, pro se.

Paul R. Summers, pro se.

Thomas E. Fox, Deputy Atty. Gen. Nashville, Tenn., for Gray.

## OPINION

Before PHILLIPS, Chief Circuit Judge, BROWN, Chief District Judge, and McRAE, District Judge.

BAILEY BROWN, Chief District Judge.

In this class action, in which a three-judge court has been convened, plaintiffs attack the Tennessee "Riot" (T.C.A. §§ 39–5101, 39–5102) and "Disorderly Conduct" (T.C.A. § 39–1213) statutes and common law offense of criminal trespass, alleging that such statutes and offense are unconstitutional in that they are vague and overbroad and further that they have been unconstitutionally applied to plaintiffs. Plaintiffs seek both declaratory and injunctive relief. At the hearing that has been held by this court, it was agreed that the three-judge court would deter-

mine whether such statutes and common law offense are invalid,[1] leaving the question of unconstitutional application to the single-judge court.[2] Since the only issue before the three-judge court was the validity of such statutes and common law offense, no evidence was presented at the hearing.

A lengthy recitation of the circumstances giving rise to this action, as alleged by plaintiffs, is unnecessary, since we are considering only the issue of validity. The plaintiffs allege that on Sunday, August 24, 1969, they and others were participants in a civil rights march which proceeded from the outskirts of Somerville, Tennessee, to the Fayette County Courthouse which is situated in the Somerville town square. The plaintiffs allege, further, that this march was, at all times, peaceful and orderly, and was for the purpose of protesting the existence of racial segregation and discrimination in Somerville. Upon reaching the Fayette County Courthouse, the demonstrators requested permission to use the Courthouse lawn and steps for the purpose of conducting a rally. This request was denied by the sheriff and when some of the demonstrators, nonetheless, stepped upon the Courthouse lawn, they were arrested. They were charged with violating one or more of the statutory offenses of inciting to riot and disorderly conduct and the common law offense of criminal trespass.

The plaintiffs ask this Court for a declaration that the statutes and common law offense in question are unconstitutional in that they are vague and overbroad and, also, they seek injunctive relief from both the pending and future prosecutions under such statutes and common law offenses.

1. We discuss hereinafter our reasons for accepting for adjudication the constitutional attack on the common law offense of criminal trespass.

2. See Landry v. Daley, 288 F.Supp. 194, 197–199 (N.D.Ill.1968) for a discussion of the propriety of leaving this determina-

tion to the single-judge court.

Plaintiffs also attack the constitutionality of the Somerville, Tennessee "parade" ordinance and an injunction issued by a State court, but of course these issues likewise address themselves to the single-judge court.

It is now elementary that, to satisfy the requirements of the Due Process Clause, a statute cannot be "so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application * * *." Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). Recently, in declaring the Tennessee vagrancy statute unconstitutional, a three-judge court, composed of the same judges as the present one, commented: "Legislation of the type that employs ambiguous phrases such as *apparent means of subsistence* and *honest calling* 'does not provide for government by clearly defined laws, but rather for government by the moment-to-moment opinions of a policeman on his beat.' Shuttlesworth v. City of Birmingham, 382 U.S. 87, 90, 86 S.Ct. 211, 213, 15 L.Ed.2d 176 (1965)." Kirkwood et al. v. Ellington et al., 298 F.Supp. 461, 465 (W.D.Tenn.1969).

With respect to the doctrine of overbreadth, in N.A.A.C.P. v. Alabama ex rel. Flowers, 377 U.S. 288, 307, 84 S.Ct. 1302, 1314, 12 L.Ed.2d 325 (1964), the Court said: "This Court has repeatedly held that a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." See, to the same effect, Cox v. Louisiana, 379 U.S. 536, 551, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965).

Neither the "Disorderly Conduct" statute, enacted by the Tennessee legislature in 1961, nor the "Riot" statute, enacted in 1968, has been interpreted by the Tennessee appellate courts.

The Tennessee disorderly conduct statute (T.C.A. § 39–1213) provides as follows:

"39–1213. *Disorderly conduct declared a misdemeanor—Definition— Penalty.*—It shall be a misdemeanor for any person to engage in disorderly conduct, which is defined as the use of rude, boisterous, offensive, obscene or blasphemous language in any public place; or to make or to countenance or assist in making any improper noise, disturbance, breach of the peace, or diversion, or to conduct oneself in a disorderly manner, in any place to the annoyance of other persons. Any person violating the provisions of this section shall, upon conviction therefor, be fined not less than two dollars ($2.00) nor more than fifty dollars ($50.00); and in the discretion of the court be confined in the county jail or workhouse for not more than thirty (30) days. [Acts 1961, ch. 236, §§ 1, 2.]"

■ It is the view of this court that this statute is susceptible to no construction which will relieve it of the constitutional infirmities of vagueness and overbreadth. A statute prohibiting and making criminal, as this one does, "the use of rude, boisterous, offensive, obscene or blasphemous language in any public place," and further declaring it a criminal offense "to make or to countenance or assist in making any improper noise, disturbance, breach of the peace, or diversion, or to conduct oneself in a disorderly manner, in any place to the annoyance of other persons," does not provide the fair warning to the public and certainty of interpretation by courts and juries that is required by the Due Process Clause of the Fourteenth Amendment.[3] Further, by limiting the exercise of the First Amendment right of freedom of speech to language that is not "rude, boisterous, offensive, * * * or blasphemous" the statute sweeps too broadly. Terminiello v. City of Chicago, 337 U.S. 1, 4, 69 S.Ct. 894, 93 L.Ed. 1131 (1949). See, to the same effect, Brooks v. Briley, 274 F.Supp. 538, 556 (M.D.Tenn.1967) (concurring opinion, Gray, J.).

3. With respect to vagueness of the phrase "breach of the peace," see, *infra*, discussion of same in connection with alleged vagueness of "Riot" statute.

The Tennessee "Riot" statute provides as follows:

"39-5101. *Definitions.*—A. A 'riot' is a public disturbance involving an act or acts of violence by one or more persons who is or are part of an assemblage of three (3) or more persons, which act or acts shall constitute a breach of the peace, or an immediate danger or shall result in damage or injury to persons or property.

"B. 'Incite to riot, to organize, promote, encourage, participate in or carry on a riot' is the urging or instigating or leading others to riot."

\*   \*   \*   \*   \*   \*

"39-5102. *Participating in, inciting, organizing riot—Penalty.*—Any person participating in a riot as herein defined or who shall incite others to riot or who organizes, promotes, encourages, or participates in a riot shall be guilty of a felony and, upon conviction, such persons shall be fined not less than one hundred dollars ($100) nor more than one thousand dollars ($1,000) or confined in the penitentiary for not less than one (1) year nor more than five (5) years or both. [Acts 1968 (Adj.S.), ch. 484, § 2.]"

Prior to the enactment of this statute, incitement to riot was a common law crime in Tennessee. Kasper v. State, 206 Tenn. 434, 326 S.W.2d 664, 333 S.W.2d 934, 92 A.L.R.2d 1081 (1959).

It is the contention of plaintiffs, as stated, that such statute has the vices of both vagueness and overbreadth. With respect to vagueness, the contention is that, by defining a "riot" in part as an act by a member of an assemblage which act constitutes a "breach of the peace," the statute is not readily understandable because "breach of the peace" has no definite meaning. With respect to overbreadth, the contention is that the statute would make criminal the act of asserting First Amendment rights of protest and assembly simply because one is part of an assemblage of which other participants are committing acts of violence. Further, with respect to overbreadth, the additional contention is that the statute, by making criminal the act of inciting others to riot, sweeps within its prohibitions the legitimate exercise of the constitutional right of free speech.

■ In support of its contention that the statute is unconstitutionally vague because of the incorporation of the phrase "breach of the peace," plaintiffs rely principally on the definition of that crime as set out in State ex rel. Thompson v. Reichman, 135 Tenn. 653, 685, 188 S.W. 225, 597 (1916), which is the leading Tennessee case on the question. We agree that the definition in that case is too vague to pass muster.[4] We conclude, however, that a fair construction of the "riot" statute makes it clear that, as used in the statute, an act cannot be a "breach of the peace" unless it is an act of "violence." So construed, we conclude that the riot statute, in this respect, is not unconstitutionally vague. See Landry v. Daley, D.C., 280 F.Supp. 938, 954, n. 60 (1968).

■ The plaintiffs also argue, as stated, that the statute is overbroad because, they contend, one who is a part of an "assemblage of three or more persons" becomes criminally liable if another one of the group engages in the forbidden conduct. This contention is rendered plausible because, as we construe § 39-5102, an "assemblage" may consist of persons who are not engaged in concerted action. However, we conclude that a reasonable construction of § 39-5102 is

---

4. In *Reichman*, it is stated, for example, at 700-701, 88 SW. at 601: "It must be remembered that the term 'breach of the peace' is not used to describe any specific crime or offense. It is generic and embraces many acts which are indictable as separate offenses. Speaking generally, \* \* \* it includes all unlawful acts and acts of public indecorum which disturb, or tend to disturb, public peace or good order \* \* \*." See Edwards v. South Carolina, 372 U.S. 229, 236-237, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963).

that in referring to "any person participating in a riot," it includes only those persons who actually are participating in the acts of violence without which there would be no riot.[5] It would therefore follow, for example, that if three or more persons individually decided to vandalize a liquor store and entered and did so acting individually but at approximately the same time, each would be guilty of participating in a riot under § 39-5102. On the other hand, as a further example, if some members of a peaceful protest march broke ranks and committed acts of violence, only they would be guilty of participating in a riot. Such a construction does not infringe on the right to lawful protest and assembly. United States v. Matthews, 419 F.2d 1177 (D.C.Cir., Nov. 10, 1969).

The other contention of plaintiffs that the riot statute is overly broad is that, in making it criminal to incite to riot, the statute infringes on constitutionally protected speech. The Supreme Court has repeatedly drawn a distinction between mere advocacy, which is an activity protected by the First Amendment, and incitement to imminent lawless action, which is an activity that may be regulated and penalized by the State. Indeed, the Supreme Court has only recently reiterated the constitutional principles applicable in this area. In Brandenburg v. Ohio, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969) the Court held unconstitutional an Ohio syndicalism statute after the Court determined that this statute made mere advocacy a crime. The Court there said:

"The constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action. As we said in Noto v. United States, 367 U.S. 290, 297–298, 81 S.Ct. 1517, 1520–1521, 6 L.Ed.2d 836 (1961), 'the mere abstract teaching * * * of the moral propriety or even moral necessity for a resort to force and violence, is not the same as preparing a group for violent action and steeling it to such action.' See also Herndon v. Lowry, 301 U.S. 242, 259–261, 57 S.Ct. 732, 739–740, 81 L.Ed. 1066 (1937); Bond v. Floyd, 385 U.S. 116, 134, 87 S.Ct. 339, 348, 17 L.Ed.2d 235 (1966). A statute which fails to draw this distinction impermissibly intrudes upon the freedoms guaranteed by the First and Fourteenth Amendments." (at 447, 448, 89 S.Ct. at 1829–1830)

We conclude that a fair and reasonable interpretation of the statute, insofar as it makes it criminal to urge, or instigate, or lead others to riot, is that conduct is not covered unless it is directed "to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg, supra.*

We therefore conclude that that part of the "Riot" statute attacked by plaintiffs, as we construed such provisions, is neither vague nor overbroad.

Finally, the plaintiffs contend that the common law offense of criminal trespass, as defined in Tennessee, is unconstitutional; again, it is their position that the offense is both vague and overbroad.

In considering this particular constitutional challenge, the Court faces initially a jurisdictional question which the challenges to the Tennessee statutes did not present. Under the terms of 28 U.S.C. § 2281 a three-judge district court

---

5. It should be noted, however, that one who does no violent act may still be guilty of inciting to riot under § 39-5102 or conspiracy to riot under § 39-5103. The latter provision is not under attack here, and we express no opinion in regard to it, but we note that it seems to make conspiracy to riot a crime without an overt act.

must hear all applications for "An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute * * *." The question that arises, therefore, is whether this Court has jurisdiction to hear an application for injunctive relief from the enforcement of a State common law offense. We are of the opinion that a three-judge court has jurisdiction to hear such an application.

■■ Under the Tennessee Constitution, Art. 11, § 1, the antecedents of which go back to the first State constitution of 1796, the common law crimes as they were recognized in North Carolina and have since been recognized by the Tennessee courts are expressly made a part of the law of Tennessee. Kasper v. State, 206 Tenn. 434, 326 S.W.2d 664 (1959). The crime of criminal trespass is such a common law crime in Tennessee. Temple v. State, 66 Tenn. (7 Baxt.) 109 (1874). In Moody v. Flowers, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967), it is made clear that it is the purpose of § 2281 to require a three-judge court whenever an injunction against enforcement is sought as to a statewide law on the ground of its unconstitutionality, however the law may have been adopted. Since the constitutional provision adopts the common law offense of criminal trespass, we consider that, for present purposes, the common law offense is the equivalent of a criminal statute.

The *Temple* case *supra*, it is agreed, contains the definitive statement of the ingredients of the common law offense of criminal trespass in Tennessee. There the Court said (at 111):

"The distinction is well settled, that if the entry is made without force although it may be unlawful, it is only a civil trespass, but if accompanied with

force amounting to a breach of the peace, or such as is calculated ordinarily to produce a breach of the peace, it is a criminal trespass."

■ The plaintiffs base their attack on the presence of the phrase "breach of the peace" within the definition of the crime and, as has been observed, such phrase may be too vague to withstand attack. However, as has also been observed, in a particular context this phrase may be given a sufficiently narrow meaning to satisfy constitutional requirements. We construe the above definition of the crime to require an illegal entry with such force as amounts to a breach of the peace or such force as is likely to cause a retaliatory force that amounts to a breach of the peace. Thus, in all events, an illegal entry accompanied by the exercise of some force is necessary. Accordingly, it is our view that the offense as so defined and construed is not unconstitutionally vague or overbroad.[6]

■ Plaintiffs also argue that the criminal trespass offense is unconstitutional on the sole ground that it is not limited in its application to private property. This contention—that a State simply cannot proscribe under any circumstances the use of public property for the exercise of First Amendment rights—is not supportable. See, for example, *Adderley, supra*, and Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc., 391 U.S. 308, 320, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968).

We therefore conclude that the Tennessee offense of criminal trespass, as defined and construed herein, is neither vague nor overbroad.

■ Since we have held the Tennessee "Disorderly Conduct" statute is unconstitutionally vague and overbroad,

6. See Adderley v. Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966), which approved a statute making criminal "Every trespass upon property of another, committed with a malicious and mischievous intent. * * *"

plaintiffs are clearly entitled to a declaration to that effect. Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967).

Plaintiffs are also seeking an injunction prohibiting prosecution, to the extent that the prosecution is grounded on an invalid statute or offense, of cases pending at the time this action was filed and of future cases. With respect to such pending cases, the Supreme Court has never decided whether actions such as this one under 42 U.S.C.A. § 1983 constitute an exception to the prohibition of injunctions contained in 28 U.S.C.A. § 2283. Indeed, as recently as in Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968) the Court (at 613, 88 S.Ct. 1335, n. 3) pointedly avoided deciding this question. In Brooks v. Briley, 274 F. Supp. 538, 552–553 (M.D.Tenn.1967), it was stated that § 2283 prohibits the enjoining of a prosecution pending when an action is brought under § 1983. We need not now decide this question, however, since we conclude that, even as to future prosecutions, we should not approve an injunction at this time. We recognize that, where, as here, First Amendment rights are involved, Cameron v. Johnson, *supra*, and Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) are subject to the interpretation that an injunction against future prosecutions is required whenever the involved statute is invalid because of vagueness or overbreadth. Stated differently, the "special circumstances" requiring injunctive relief may well be present even in the absence of bad faith enforcement if First Amendment rights are at stake. Landry v. Daley, 288 F.Supp. 200, 214 (N.D.Ill. 1968). It is our view, however, that we should hold in abeyance the question of injunctive relief pending further developments. This three-judge court will retain jurisdiction for a later consideration of the appropriateness of such relief.

An order will be prepared and entered consistent with this opinion.