The **ORIGINAL FAYETTE COUNTY CIVIL AND WELFARE LEAGUE, INC., et al., Plaintiffs,**

v.

Buford **ELLINGTON, Governor of the State of Tennessee, et al., Defendants.**

Civ. A. No. C–69–266.

United States District Court, W. D. Tennessee, W. D.

Feb. 9, 1970.

Ratner, Sugarmon, Lucas & Willis, and Russell X. Thompson, Memphis, Tenn., for plaintiffs.

Joe A. Dycus, Cooperating Atty., Memphis, Tenn., American Civil Liberties Union, West Tennessee Chapter, Intervening as amicus curiae.

David M. Pack, Atty. Gen., State of Tenn., and Thomas E. Fox, Deputy Atty. Gen., Nashville, Tenn., for Ellington and Pack.

J. P. Matthews, Somerville, Tenn., for Yancy, Burrow and Howse.

J. P. Matthews, and Joe N. Cocke, Somerville, Tenn., for Rhea, Rike, Tapp, Cooksey, Price, Minor, Walters, Fair, Powers, Rosser, Fisher, Rhea, Barnes, Thompson, Shinault, Sanders, Damron, Peaks and Hampton.

Joe N. Cocke, Somerville, Tenn., for Bowling, Luck and Tomlin.

Will Abernathy and Preston Park, pro se.

Paul R. Summers, pro se.

Thomas E. Fox, Deputy Atty. Gen., Nashville, Tenn., for Gray.

## OPINION

BAILEY BROWN, Chief Judge.

In this action the three-judge court has heretofore rendered an opinion on the validity of the involved State statutes and common law offense 309 F. Supp. 89. It remains for the single judge at this time to determine the validity of the attacked ordinance of the City of Somerville, Tennessee and the temporary injunction issued *ex parte* in the Chancery Court of Fayette County, Tennessee against some of plaintiffs. At the hearing held by the three-judge court it was agreed that counsel would, for the benefit of the single judge, also address themselves to the question of the validity of the ordinance and injunction, and this was done.[1] Accordingly, this court now

---

1. Since the three-judge and single-judge courts were initially to consider only the question of the validity of the statutes, common law offense, ordinance and injunction, no proof was heard. It will still remain, as pointed out in the three-judge opinion, for the single-judge to determine whether these were unconstitutionally applied, which would require, of course, an evidentiary hearing.

addresses itself to the sole question of whether or not such ordinance or injunction is, on its face, unconstitutional.

Plaintiffs allege in their complaint that some of plaintiffs and other members of the class were arrested for violation of the "parade" ordinance [2] when they peacefully picketed merchants in Somerville, carrying signs urging a boycott in support of their protest against racial discrimination there.

It is the contention of plaintiffs that the ordinance is void on its face in that it constitutes an unconstitutional prior restraint on their First Amendment rights of free speech, assembly and protest.

█ It will be noted that the ordinance contains no objective standards to guide the Mayor and Aldermen in granting or withholding permits for parades and picketing. If the absence of such guidelines is interpreted as allowing broad discretion in this regard, it is clear that the ordinance does amount to an unconstitutional prior restraint. Shuttlesworth v. City of Birmingham, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162, 167 (1969). There has been no authoritative interpretation of the ordinance by the State courts.

In *Shuttlesworth,* the Supreme Court discussed the earlier case of Cox v. New Hampshire, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1940), in which the Court had reviewed the conviction of some members of "Jehovah's Witnesses" for violating a State statute prohibiting a parade or procession without a permit. The Court in *Cox* had held that the statute there as construed by the New Hampshire Supreme Court was constitutional. The statute was, as Justice Stewart said in *Shuttlesworth,* "silent as to the criteria governing the granting of permits." The Court in *Shuttlesworth* went on to point out, however, that, as had been pointed out in the *Cox* opinion, the New Hampshire Supreme Court had construed the statute to mean that it was to be applied without discrimination and that the convicted parties would have had a right to a permit if they had applied and upon investigation it had appeared "that the convenience of the public in the use of the streets would not thereby be unduly disturbed, upon such conditions or changes in time, place or manner as would avoid disturbance." Since the Alabama Supreme Court had given the Birmingham ordinance a construction similar to that given to the statute by the New Hampshire Supreme Court in *Cox,* the Court in *Shuttlesworth* indicated that the Birmingham ordinance was constitutional.[3]

2. Ordinance Book—Pages 178–179—Section 2. CERTAIN USES OF STREETS AND SIDEWALKS ARE UNLAWFUL. Be it further ordained that it shall be unlawful for any person or persons without the written permission of the Board of Mayor and Aldermen of the Town of Somerville, Tennessee, to conduct or participate in any parade or marching on the sidewalks or streets of the Town of Somerville, Tennessee, or to walk, ride, or stand in organized groups on said sidewalks or streets while carrying banners, placards, signs or the like, or to sit, kneel, or recline on the sidewalks or streets of said Town, or to engage in public speaking, group shouting, group singing or any other similar distracting activity on any of the sidewalks or streets of said Town, or to assemble in groups on any sidewalk or street in such number or manner as to block or interfere with the customary and normal use thereof by the public unless the persons so assembled in such groups are engaged in watching a march or parade authorized by the provisions hereof; provided, however, that no written permission of the Board of Mayor and Aldermen of said Town of Somerville shall be required for a bona fide funeral procession en route to a cemetery or for any parade or march by any unit of the Tennessee National Guard or the United States Army, Navy, Air Corps, or Marine Corps, or by personnel of the Police or Fire Department of said Town of Somerville, Tennessee.

3. The Court in *Shuttlesworth* went on to hold, however, that, in spite of the fact that the Alabama Supreme Court had placed an interpretation on the involved Birmingham ordinance that rendered it constitutional on its face, the Birming-

■ It is our view that, in the absence of an authoritative interpretation by the State courts, the Somerville ordinance should be interpreted as giving no more authority or discretion in granting permits than did the New Hampshire statute as interpreted by the State court in Cox v. New Hampshire, and that therefore the ordinance, merely because it requires a permit, does not constitute an unconstitutional prior restraint.

■ We do not mean to indicate that an ordinance requiring a permit for ordinary picketing would be constitutional. But this ordinance prohibits only walking, riding or standing *"in organized groups* on * * * sidewalks or streets while carrying banners, placards, signs or the like. * * *"* (Emphasis ours) We construe this to mean that a permit is required only when the picketing is such as would be likely to interfere with the normal use of the streets and sidewalks.[4] So construed, again, the requirement of a permit does not constitute an unconstitutional prior restraint. The distinction to which we are now referring is pointed up by Mr. Justice Marshall in Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc., 391 U.S. 308, 88 S.Ct. 1601, 20 L.Ed.2d 603 (1968) at 320–321, 88 S.Ct. at 1609 as follows:

"In addition, the exercise of First Amendment rights may be regulated where such exercise will unduly interfere with the normal use of the public property by other members of the public with an equal right of access

to it. Thus it has been held that persons desiring to parade along city streets may be required to secure a permit in order that municipal authorities be able to limit the amount of interference with use of the sidewalks by other members of the public by regulating the time, place, and manner of the parade. Cox v. State of New Hampshire, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049, [133 A.L.R. 1396] (1941)."

We therefore conclude that the ordinance, so construed, is not unconstitutional on its face.

Plaintiffs also attack the constitutionality of the temporary injunction issued in the Chancery Court of Fayette County.[5] Defendants concede that the injunction was issued *ex parte,* no notice being given to plaintiffs. Plaintiffs contend that the injunction on its face constitutes an illegal prior restraint on their exercise of First Amendment rights and further that in any event it constitutes an illegal prior restraint because it was issued without notice and an opportunity for an adversary hearing.[6] Plaintiffs rely primarily on Carroll v. President & Commissioners of Princess Anne, 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968).

In *Carroll,* it appears that an organization called the National States Rights Party held a rally in Princess Anne, Maryland, at which insulting attacks were made on Negroes and Jews that were "scarcely disguised by protestations of peaceful purposes." It was announced

---

ham authorities had unconstitutionally applied the ordinance when Shuttlesworth had sought a permit.

4. Plaintiffs' complaint can be construed to allege that the picketing for which they were arrested was such that did not interfere with the normal use of the public ways, but such contention raises only an issue of an unconstitutional application of the ordinance.

5. The injunction prohibited "the picketing and marching by the Defendants, their agents, servants or employees and those acting in concert with them of the busi-

ness houses and stores of Complainants and other Somerville Merchants and from engaging in coercion, attempted threats, intimidations and violence for the purpose of interfering with Complainants' carrying on of their normal business activities and for the purpose of interfering with Complainants' customers or prospective customers."

6. Since it is conceded that the injunction was issued *ex parte,* we deem it appropriate to determine now whether such fact without more requires a holding that the issuance of the injunction was unconstitutional.

that the rally would be resumed the following night. The next day the officials of Princess Anne obtained a 10-day restraining order that effectively prohibited the holding of the rally, the order being granted *ex parte,* without notice, formal or informal.

■ Before we discuss the holding in *Carroll,* we will say, at the outset, that we agree with plaintiffs that though protest marching and picketing are subject to regulation to an extent that cannot be applied to pure speech, these are, nevertheless, rights protected by the First Amendment (*Amalgamated Food Employees, supra*); and we further agree with plaintiffs that they may properly rely here on the holding in *Carroll,* though it dealt with a rally and speaking rather than marching and picketing.

In *Carroll,* the Court held that, under the circumstances as they appeared in the record there, it was unconstitutional to issue the injunction without notice and an opportunity to be heard. The circumstances were that the defendants were available to be given notice, and no excuse appeared for not giving notice. The Court said at 185–186, 89 S.Ct. at 353:

> "We need not here decide that it is impossible for circumstances to arise in which the issuance of an ex parte restraining order for a minimum period could be justified because of the unavailability of the adverse parties or their counsel, or perhaps for other reasons. In the present case, it is clear that the failure to give notice, formal or informal, and to provide an opportunity for an adversary proceeding before the holding of the rally was restrained, is incompatible with the First Amendment."

In the instant case, it simply does not yet appear in the record whether plaintiffs who were the objects of the injunction suit, or their counsel, were available to be given notice at that time. If they or their counsel were available, it appears clear that the injunction could not

constitutionally be issued *ex parte;* if they were not available, it appears that, depending on the circumstances, it could have been constitutional to issue the injunction *ex parte.*

The other contention of the plaintiffs is that, in prohibiting marching and picketing, the injunction on its face constitutes an unconstitutional prior restraint.

■ It is clear, as plaintiffs argue, that, stated in the language of *Carroll* (at 184–185, 89 S.Ct. at 353):

> "An order issued in the area of First Amendment rights must be couched in the narrowest terms that will accomplish the pin-pointed objective permitted by constitutional mandate and the essential needs of the public order. In this sensitive field, the State may not employ 'means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved.' Shelton v. Tucker, 364 U.S. 479, 488, 81 S.Ct. 247, 5 L.Ed.2d 231, 237 (1960). In other words, the order must be tailored as precisely as possible to the exact needs of the case."

However, we do not read *Carroll* to hold that *under no circumstances* should the exercise of First Amendment rights be enjoined for a short period of time. In this connection the Court said:

> "We need not decide the thorny problem of whether, on the facts of this case, an injunction against the announced rally could be justified." (p. 180, 89 S.Ct. p. 351)

> \*   \*   \*   \*   \*   \*

> "We do not here challenge the principle that there are special, limited circumstances in which speech is so interlaced with burgeoning violence that it is not protected by the broad guarantee of the First Amendment. In Cantwell v. State of Connecticut, 310 U.S. 296, at 308, 60 S.Ct. 900, at 905, 84 L.Ed. 1213, at 1220, [128 A.L.R. 1352] (1940), this Court said that '[n]o one would have the hardihood to suggest that the principle of freedom

of speech sanctions incitement to riot.' " (p. 180, 89 S.Ct. p. 351)

\* \* \* \* \* \*

"Because we reverse the judgment below on this basis, we need not and do not decide whether the facts in this case provided a constitutionally permissible basis for temporarily enjoining the holding of the August 7 rally." (p. 185, 89 S.Ct. p. 353)

 In the instant case, as the record now stands, we simply cannot tell whether the circumstances were such as to allow, consistently with the First Amendment, the issuance of a temporary injunction against marching and picketing.

In summary, then, it is the conclusion of the single-judge court that the involved ordinance and injunction are not as a matter of law void.

An order will be prepared for entry consistent with this opinion.