553 P.2d 1230
**STATE of Arizona, Appellee,**
v.
**Maurillio Villalobos URIAS and
Juan M. Corpus, Appellants.**

**Nos. 1 CA–CR 1177, 1 CA–CR 1178.**

Court of Appeals of Arizona,
Division 1,
Department C.
July 6, 1976.

Rehearing Denied Aug. 3, 1976.

Petition for Review Sept. 16, 1976.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III, Chief Counsel, Crim. Div., Ronald L. Crismon, Asst. Atty. Gen., Phoenix, for appellee.

John F. Foreman, Phoenix, James Rutkowski, Los Angeles, Cal., Stephen D. Burton, Salinas, Cal., for appellants.

FROEB, Judge.

The appellants were convicted of participating in a riot in violation of A.R.S. § 13–631 and were placed on probation. They have appealed from their convictions, urging that they be reversed for three reasons:

1. A.R.S. § 13–631 and § 13–631.01 are vague and overbroad and therefore unconstitutional on their face;

2. the trial court erred in denying a request for change of venue; and

3. the evidence did not support the verdict.

The evidence, which we review in the light most favorable to upholding the verdict, discloses the following facts. On November 5, 1974, a bus containing approximately 30 to 40 pickets belonging to the United Farm Workers union proceeded to a lemon grove in Yuma County, Arizona. Approximately 15 workers were in the grove picking lemons. When the bus stopped, the pickets alighted from the bus, following the appellants, their apparent leaders. On their way into the grove, the pickets apparently picked up rocks and sticks and threw them at workers standing near the grove. There were directions from the two appellants to the others urging them to "Come on, no one is going to work here today, let's go, come on, and go into the groves." There was also evidence which indicated that appellant Urias engaged in a physical assault on a work foreman at the grove and that the pickets pushed a police officer from the entrance of their bus in order to board after retreating from the grove.

The evidence was uncontroverted that appellant Urias was a union organizer who had volunteered to help organize the strike in Yuma. Appellant Corpus was identified as a team captain who was assigned the duty of insuring that the pickets were properly utilized to voice the union's message to the workers in the fields.

## CONSTITUTIONALITY OF A.R.S. § 13–631

■ Appellant argues that A.R.S. § 13–631 and § 13–631.01 are unconstitutionally vague and overbroad. In view of the fact that appellants were not convicted of a violation of A.R.S. § 13–631.01, we deal only with A.R.S. § 13–631, which states in part:

A Any use of force or violence disturbing the public peace, or any threat to use such force or violence, if accompanied by immediate power of execution, by two or more persons acting together, and without authority of law, is a riot.

B A person who participates in a riot is guilty of a felony.

We do not think that statute suffers from the "underlying principle . . . that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Harriss*, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954). Our statute authorizes conviction for acts of violence which disturb the public peace. Any person who joins a group of persons who run screaming, yelling obscenities, and throwing rocks at other persons, could reasonably be expected to understand that his conduct was proscribed by the above statute. As noted by the court in *Colten v. Commonwealth of Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972):

The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited. We agree with the Kentucky court when it

said: "We believe that citizens who desire to obey the statutes will have no difficulty in understanding it . . . ." *Colten v. Commonwealth,* 467 S.W.2d, at 378. [407 U.S. at 110, 92 S.Ct. at 1957.]

As noted by our Supreme Court in *State v. Starsky,* 106 Ariz. 329, 475 P.2d 943 (1970):

> It is a doctrine well recognized by this court that for a criminal statute to be unconstitutional for vagueness it must be so vague as to fail to give a citizen notice of what conduct on his part will lead to its violation. [106 Ariz. at 331, 475 P.2d at 945.]

A.R.S. § 13–631 gives reasonable notice of the proscribed conduct and is not so vague that a citizen who desired to obey the statute would have difficulty in understanding it.

The court in *Original Fayette County Civic and Welfare League, Inc. v. Ellington,* 309 F.Supp. 89 (W.D.Tenn.1970) rejected overbreadth and vagueness attacks on a Tennessee riot statute, Tennessee Code Annotated § 39–5101. That statute held in part:

> A "riot" is a public disturbance involving an act or acts of violence by one or more persons who is or are part of an assemblage of three (3) or more persons, which act or acts shall constitute a breach of the peace or an immediate danger or shall result in damage or injury to persons or property. [309 F.Supp. at 93.]

The defendant in *Ellington* argued that the Tennessee statute was vague because the definition of riot was not readily understandable due to the fact that "breach of the peace" had no definite meaning. The court, in rejecting the argument, stated:

> We conclude, however, that a fair construction of the "riot" statute makes it clear that, as used in the statute, an act cannot be a "breach of the peace" unless it is an act of "violence." So construed, we conclude that the riot statute, in this

respect, is not unconstitutionally vague. [309 F.Supp. at 93.]

We think our statute is equally directed at punishing only acts of violence which disturb the public peace. The term "breach of the public peace" is not so vague that it violates due process, nor, in the context of this statute, so overbroad that it sweeps within its proscription constitutionally protected conduct. See *State v. Johnson,* 112 Ariz. 383, 542 P.2d 808 (1975); *Starsky,* supra; *State v. Brahy,* 22 Ariz.App. 524, 529 P.2d 236 (1974); *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). By punishing "threats" to use force or violence to disturb the public peace, the statute clearly seeks to control only expression which declares an intention to cause injury or damage through unlawful acts, when those threats are accompanied by the immediate power of execution. This is a far cry from an attempt to control the advocacy of unpopular ideas, *Terminiello v. City of Chicago,* 337 U.S. 1, 69 S.Ct. 894, 93 L. Ed. 1131 (1949), or the advocacy of the necessity to use force or violence in the abstract. *Brandenburg v. Ohio,* 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969).

## CHANGE OF VENUE

For their second issue on appeal, the appellants argue that despite the number of questions asked the veniremen as a group, the jury selection process was totally inadequate under the circumstances of this case to obtain jurors who had not already formulated opinions about the citrus strike with which the appellants were closely associated.

■ Appellants' pretrial motion for a change of venue was denied by the trial court. This court will not disturb the trial court's ruling on such a motion on appeal unless a clear abuse of discretion appears and is shown to be prejudicial to the defendant. *State v. Ferrari,* 112 Ariz. 324, 541 P.2d 921 (1975); *State v. Narten,* 99 Ariz. 116, 407 P.2d 81 (1965), cert. den.

384 U.S. 1008, 86 S.Ct. 1985, 16 L.Ed.2d 1021 (1966).

 We think appellants' argument, followed to its logical conclusion, would require this court to hold that as a matter of law a union employee could not be tried in any county wherein his union was engaged in union related activities such as a strike or other collective bargaining processes. The fact that a union's activities are widely publicized does not in and of itself overcome the presumption that a defendant can be accorded a fair trial in the county. Cf., *State v. Hunt*, 2 Ariz.App. 6, 406 P.2d 208 (1965). Furthermore, we think that appellants base their conclusion that they could not receive a fair trial in Yuma County on the assumption that every potential juror called to sit at their trial was adversely prejudiced to their position by the publicity. Whether such an assumption is valid is clearly beyond the scope of this opinion. We note that the trial judge engaged in a thorough and lengthy examination of the jurors. In fact, no less than seven jurors were excused for cause. While the publicity surrounding the union's activities, documented through numerous exhibits attached to the motion for change of venue, was extensive and continuous, we do not think that it was so prejudicial "that only a change of venue was constitutionally sufficient to insure the kind of impartial jury that is guaranteed by the Fourteenth Amendment." *Groppi v. Wisconsin*, 400 U.S. 505, 91 S.Ct. 490, 27 L.Ed.2d 571 (1971).

## SUFFICIENCY OF THE EVIDENCE

 For their final ground on appeal the appellants argue that there was no evidence that they actually used force or violence during the activities at the lemon groves and that they were convicted not for their participation but merely for their presence.

As noted earlier, the evidence at trial shows that the appellants were the organizers and leaders of a group of persons who disembarked from a bus and ran into a cit-

rus grove to prevent the workers in the grove from working. The evidence demonstrated that in addition to yelling and screaming, rocks and sticks were thrown at some of the field-workers. Furthermore, there was evidence which indicated that appellants were indeed leading the charge into and out of the grove. Finally, the evidence was more than sufficient to show that appellant Urias engaged in a fight with a foreman of the work crew.

 It is well established that this court will view the facts most strongly in favor of upholding this jury's verdict and will view the evidence in favor of the state on review. *State v. Flowers*, 110 Ariz. 566, 521 P.2d 998 (1974). We think that there was substantial evidence of appellant's active and unlawful participation in the riotous conduct and that it was properly submitted to the jury for its determination. *State v. Holliday*, 92 Ariz. 168, 375 P.2d 370 (1962).

The judgment and conviction as to each appellant is affirmed.

EUBANK, P. J., and HAIRE, Chief Judge, Division 1, concurring.