WALLACE *et al. v.* STATE.

(*Nashville*, December Term, 1953.)

Opinion filed May 21, 1954.

Rehearing denied July 23, 1954.

578

HOMER B. WEIMAR, WALKER, HOOKER, KEEBLE, DODSON & HARRIS, and TYREE B. HARRIS, III, all of Nashville, for plaintiffs in error.

KNOX BIGHAM, Assistant Attorney General, for the State.

Mr. Justice Tomlinson delivered the opinion of the Court.

The questions here are whether the Court erred in ordering (1) a forfeiture of the $15,000 cash bond deposited in accordance with Code Section 11678 for the appearance of Howard Thomas Wallace in the hereinafter mentioned criminal cases, and (2) forfeiture of a bail bond to secure Wallace's presence at the hearing of a fugitive from justice case, Jack Scott being the surety on this bail bond, and (3) whether the petition for the relief authorized by Code Section 11695 to lessen or remit the amount of the forfeiture, if any, has merit.

Three indictments, each charging robbery, and containing a habitual criminal count, were returned against Wallace by the Davidson County grand jury. By order of the Trial Court he was allowed to deposit with the clerk $15,000 in cash in lieu of a bail bond, Code 11678 et seq., to secure his appearance "for trial in the above numbered cases and abide such orders of the Court as are made in these cases until final disposition thereof". This order then declared a lien on this money for the fees of his two attorneys in the cases, if not forfeited to the

State for failure of Wallace to appear according to his undertaking.

Upon a trial in one of these cases, number 19760, the jury returned a verdict of guilty of robbery, and not guilty on the habitual criminal count. Wallace's motion for a new trial on the robbery count was set for hearing, as finally fixed, on January 17, 1953. In the meantime, Wallace remained at liberty on the aforesaid cash bond.

The January 14 minutes of the Court recite that the District Attorney General stated to the Court that Wallace is in custody at Jackson, Mississippi for some offense alleged to have been committed there. At that time the hearing of the motion for a new trial had been set for January 16. This order then recited that it is necessary for Wallace to attend that hearing; hence, "it is ordered by the Court that a capias issue forthwith for the arrest of the defendant Howard Thomas Wallace in order that he may be returned into custody and to the end that he be present in this Court on Friday, January 16, 1953 at 9:30 A.M."

The language of this order reflects it to be a fact that the Trial Court intended for the officer to whom this capias is delivered to go to Jackson, Mississippi, and bring Wallace back. The Attorney General for Davidson County had in the meantime phoned and wired the sheriff at Jackson, Mississippi to hold Wallace for the Tennessee authorities in the event of bail on the Mississippi charge.

At the time of the entry of this order, and the immediate issuance of the capias thereby ordered, and the instructions of the Attorney General to the Mississippi officers to hold Wallace, there had been no showing that Wallace would not be present in the Davidson County

Court on January 16 for the hearing of his motion, unless the Trial Court was permitted to infer that he would fail to make bail bond in the Mississippi case and be discharged in time to return to Tennessee for the January 16 hearing. But there is no basis upon which the drawing of such an inference was judicially permissible.

Some time during the day of January 16, Wallace succeeded in making appearance bond in the Mississippi cases, and was thereupon delivered at Jackson, Mississippi, by the Mississippi authorities to the Tennessee deputy sheriff, to whom had been delivered the capias which had been ordered and issued on January 14. This deputy sheriff accepted the delivery, handcuffed Wallace, and started back to Tennessee. At some place in Alabama Wallace escaped. Some days later he was caught in an act of robbery in Virginia, and is serving in its penitentiary a sentence of several years for that offense.

The undisputed evidence is that the two attorneys representing Wallace in the Tennessee cases requested the Attorney General to make application to the Court for the issuance of the January 14, capias. One of these two attorneys accompanied the Davidson County deputy sheriff to Jackson, Mississippi, and was with this deputy on the return trip at the time Wallace effected his escape in Alabama.

By technically proper proceedings a judgment final forfeiting this money to the State of Tennessee was entered over objections and exceptions made in behalf of Wallace and his two attorneys. Upon this, their appeal, it is insisted that it was error to enter judgment final forfeiting this money to the State; that, on the other hand, the conditional forfeiture first entered should be set aside, ''and the scire facias discharged''.

In support of the insistence just stated, the brief of plaintiffs in error says it to be well settled law "that where a defendant is re-arrested for an offense in which he has already made a bond, his bond is discharged and no liability can subsequently accrue thereon in the event the defendant succeeds in making good an escape". As authority for this statement there is cited *Russell* v. *State,* 134 Tenn. 640, 643, 185 S.W. 693, 694, wherein it is held that:

"A second arrest on the same offense on a *valid* capias has the legal effect to take the prisoner out of the custody of his sureties, 'jailers of his own choosing'; and, the defendant being then in the custody of the law, the sureties are released." (Italics ours.)

The question which we are immediately required to answer, therefore, is whether the capias in the instant case was a valid capias. This capias was issued while Wallace was at liberty on his recognizance secured by a $15,000 cash deposit.

After a defendant is at liberty on bond he may be arrested again for the same charge upon order of the Trial Court for any one or more of the reasons set out in Code Section 11711. The order of the Court directing the issuance of this capias for the re-arrest of Wallace was not based on any of the reasons set out in Code Section 11711. It was, therefore, an unauthorized, hence invalid, capias.

In the Russell case, supra, an unauthorized capias was issued for the re-arrest of a party out on bail. While in the custody of the sheriff by reason of this unauthorized capias the defendant escaped. The sureties insisted that by reason of this re-arrest they were released. In re-

jecting this insistence the Court held, 134 Tenn. at page 643, 185 S.W. at page 694, that ''the issuance of a capias without authority, or as 'a work of supererogation,' and a subsequent arrest of the defendant thereunder, followed by his escape, does not operate to release or exonerate his sureties.''

Since the capias in the instant case was unauthorized, the holding in the Russell case rules the case at bar, and makes it necessary to hold that the re-arrest of Wallace on the invalid capias did not operate to discharge his recognizance and release the $15,000 cash deposit.

It is insisted, however, that the State is not entitled to this forfeiture because the District Attorney General has not requested the State of Virginia to surrender Wallace to the State of Tennessee for proceedings by Tennessee in cases in which this cash was deposited. But it is held in *Devine* v. *State*, 37 Tenn. 623 (Reprint 622), that such subsequent arrest and imprisonment in a foreign State does not excuse the carrying out of the obligations of the bail bond or recognizance. This is the holding generally. *State* v. *Douglas*, 91 W. Va. 338, 112 S. E. 584, 26 A. L. R. 408, 412; 4 A. L. R. (2d) 446.

The law does not require the District Attorney General to request another State to surrender its prisoner to Tennessee prior to the expiration of his sentence in such other state. That being true, there is no foundation upon which may be rested a holding that the failure of the District Attorney General to make such a request deprives Tennessee of a right it otherwise has under the law.

At the time the Court made final the judgment forfeiting this cash to the State the attorney general had

not filed his answer to the pleading of plaintiffs in error as to why there should be no forfeiture. He did, however, orally state what the contents of that answer would be. It is insisted that this amounted to a prejudging of the case without being aware of the equities of plaintiffs in error.

Subsequent to the entry of judgment making the forfeiture final the answer of the attorney general was filed, and while the judgment was still under the control of the Court. It does not appear that there was anything developed by the answer or by the subsequent proof which had not been made known to the Court at the time it made the judgment final. The record leads to the contrary conclusion. It results that if the Court was technically premature in declaring the forfeiture it was not error that was prejudical.

■ The order permitting Wallace to make this cash bond of $15,000 declared a lien upon the entire amount to secure the payment of the fees of the two attorneys representing Wallace subject to the rights of the State under the recognizance of Wallace. The order recites that he was present when this was done. Based upon that interest in this cash these attorneys petitioned the Court to give to them personally, not to Wallace, the relief authorized by Code Section 11695, reading as follows:

"The judges of the circuit, criminal, and supreme court may receive, hear, and determine the petition of any person who may conceive that he merits relief on any recognizances forfeited, and so lessen or absolutely remit the same, and do all and everything therein as they shall deem just and right, and consistent with the welfare of the state, as well as the person praying such relief."

It is held in *Black* v. *State*, 154 Tenn. 88, 90-91, 290 S. W.

20, 21, that the power to relieve from all or part of the forfeiture under this code section " 'may be exercised for the benefit of the sureties as well as for that of the accused.' " It will be assumed, in so far as this case is concerned, that such financial interest as these attorneys may have in this fund by reason of the aforesaid order entitles them to the same consideration under this code section as are sureties.

In *Goldsby* v. *State,* 159 Tenn. 396, 399, 19 S. W. (2d) 241, it is held that the discretion exercised by the Trial Judge under this code section will not be reviewed by the Supreme Court unless arbitrarily exercised. Since the Trial Judge's discretion in this matter was not arbitrarily exercised this Court is without authority to consider de novo this petition if this statement in *Goldsby* v. *State* applies.

*Goldsby* v. *State,* supra, cites *State* v. *Frankgos,* 114 Tenn. 76, 85 S. W. 79, as its authority for ruling that the discretion exercised by the Trial Judge will not be reviewed unless arbitrarily exercised. *State* v. *Frankgos* was decided in 1905. In 1915 Code Section 11695 was amended by adding the words "and supreme court" thereby causing this section to read that "The judges of the circuit, criminal, and supreme court" may determine petitions of principals and sureties for relief under bail or recognizance bonds. It may be that the Court in deciding *Goldsby* v. *State,* supra, in 1929 overlooked the fact that the Supreme Court was not specifically mentioned in what is now Code Section 11695 at the time *State* v. *Frankgos,* supra, was decided in 1905. However that may be in so far as it applies to this case, we will assume this Court is authorized by this code section to consider this petition de novo.

*State* v. *Frankgos,* supra, held that relief may be granted to sureties under the authority of Code Section 11695 only in those cases in which the sureties are unable to produce their principal because of his death or because of some other unavoidable happening. Of course, Wallace could have avoided this escape or flight into Virginia or the robbery which now holds him there. A review of our cases seem to indicate that our Courts have consistently followed this holding in the Frankgos case in proceedings had under Code Section 11695. In the instant case, therefore, this Court is apparently without authority to remit or lessen the amount of the forfeiture unless these previous holdings are disregarded and, in substance, reversed.

No decision of this Court on facts paralleling those in the instant case has been found. However, it is said in the text of 8 C. J. S., Bail, Section 92, p. 187, that: "The general rule is that the arrest and imprisonment of accused in proceedings in another jurisdiction than that in which the recognizance was entered into and in which defendant was conditioned to appear is not a sufficient ground for remitting the forfeiture of the recognizance, especially where the arrest occurs after forfeiture." Decisions in support of the statement are cited.

For the reasons stated, this Court must affirm the action of the Trial Court in forfeiting this $15,000 cash bond. However, all costs accrued in all courts against Wallace in Cases 19,756, 19,758 and 19,760 should be paid out of this $15,000, and it is, accordingly so ordered. With this modification, the judgment of the Court below will be affirmed.

The case of *State* v. *Wallace,* Number 19,760½, consolidated with the cases just discussed, is the one in

which Wallace executed bail with plaintiff in error, Jack Scott, as his surety. Every insistence made by Mr. Scott in his brief is determined by that heretofore said in this opinion. For the reasons stated, the action of the Trial Court in ordering a forfeiture on this bond must be approved. However, all costs which have accrued in every Court in that case should be paid out of the recovery on this bond from Scott. It is accordingly so ordered. With this modification, the judgment of the Court below will be affirmed in that case.

### On Petition to Rehear.

The petition to rehear first calls attention to the following language of this Court's opinion:

"After a defendant is at liberty on bond he may be arrested again for the same charge upon order of the Trial Court for any one or more of the reasons set out in Code Section 11711. The order of the Court directing the issuance of this capias for the re-arrest of Wallace was not based on any of the reasons set out in Code Section 11711. It was, therefore, an unauthorized, hence invalid, capias."

The insistence of the petition is that this conclusion is incorrect, in that, so says the petition, "a capias may issue in the discretion of the Trial Judge for reasons other than those listed" in Section 11711. The petition, as authority for this insistence, refers the Court to Code Section 11715 reading as follows:

"If the order be made for any other cause, and the offense is bailable, the court may fix the amount of bail, and may cause a direction to be inserted in the order, that the defendant be admitted to bail in the sum fixed, which shall be specified in the order."

■ Code Sections 11711 through 11715 are all carried as one article under the heading "Rearrest After Giving Bail". Each of these five code sections appeared at the same time in our Code. It will be noticed that in the first sentence of Section 11711 it is stated that after the defendant has given bail the Court may *"order* him to be again arrested and committed in the following cases". Code Section 11712 refers to the requisites of *"the order"*. Section 11713 directs how the defendant may be arrested "pursuant to *the order"*. Section 11714 says that "If *the order* recite". Then Section 11715 is that "If *the order* be made" etc. (Emphasis supplied.) It is fairly obvious that the expression "the order" used in each of Sections 11712-11715 refers to the order first mentioned in Section 11711. The order authorized by Code Section 11711, hence the order referred to in Sections 11712-11715, may be made only for the reasons set out in Code Section 11711.

There appears in Code Section 11715 the expression "for any other cause". In effect, though probably not so intended, the petitioner, in order to make his point, isolates this expression from all else that appears in these five code sections, the last four of which are dealing only with what may be done when a defendant is re-arrested under an order authorized by any of the reasons set out in Code Section 11711. However, the expression "for any other cause" must be construed in context, rather than as an isolated expression.

■ To be more specific on the thought just last stated, —it is provided by Section 11714 that if the order is made for the third reason authorized by Section 11711, then "the defendant shall be committed", etc. Then follows Section 11715 providing that "If the order be made for

any other cause". "The order," of course, refers to the order authorized by Code Section 11711. It could not refer to anything else. And the expression "for any other cause" refers to any mentioned in Section 11711 other than the cause expressly referred to in Section 11714. The expression considered in context could hardly be given any other meaning.

For the reasons stated, the Court is of the opinion that the petition to rehear is not well taken; hence, must be denied.