STATE of Tennessee, Appellee,

v.

William Alvin CLEMENTS,
Jr., Appellant.

Supreme Court of Tennessee,
at Nashville.

June 24, 1996.

Charles W. Burson, Attorney General and Reporter, Kathy Morante, Deputy Attorney General, Nashville, Joseph D. Baugh, District Attorney General, Ronald L. Davis, Assistant District Attorney, Franklin, for Appellee.

Dale M. Quillen, Michael J. Flanagan, Nashville, for Appellant.

## OPINION

DROWOTA, Justice.

This case presents the following issue for our determination: whether a cash bond, deposited by the parents of a criminal defendant to ensure the defendant's appearance in court, may be attached to cover fines and costs incurred by the defendant in connection with the prosecution. We hold that the bond may not be so attached, and therefore reverse the judgment of the Court of Criminal Appeals.

### FACTS AND PROCEDURAL HISTORY

The facts of this case are undisputed. In November 1992 William Alvin Clements, Jr. was indicted by the Hickman County Grand Jury on three counts of aggravated kidnaping and one count of spousal rape. The trial court initially set the bond at $75,000, but reduced it to $40,000 upon motion of the defendant.

A cash bond was subsequently deposited with the clerk of the court by William Alvin Clements, Sr., the defendant's father, to secure the defendant's release. This bond provides as follows:

### COURT APPEARANCE BOND
### STATE OF TENNESSEE,
### HICKMAN COUNTY

We, *William A. Clements Jr.*, Principal and others *William A. Clements, Sr. and Maude Clements* agree to pay to the State of Tennessee *$40,000 Cash Bond* Dollars unless the said principal appears in the proper court at Centerville, Tenn., on the *9th* day of *March 1993* at 9 o'clock a.m. to answer the offense of *3 counts especially aggravated kidnaping* and does not depart the court without leave. We solemnly

swear that we are worth the amount of this bond, above our exemptions and indebtedness, so help us God. This bond is good from term to term in General Sessions, city, and Circuit Court until the case is finally terminated or stricken from the docket and the defendant discharged by the Court.

> *William A. Clements, Jr.,* Principal
>
> *William A. Clements, Sr.,* Security
>
> *Maude Clements,* Security

The jury subsequently found the defendant guilty of each count in the indictment, and the trial court sentenced him to 25 years on each aggravated kidnaping count and six years on the spousal rape charge. The court also fined the defendant a total of $85,000.

On the day of the jury's verdict, the defendant and his father assigned $12,500 to attorneys Dale Quillen and Michael Flanagan for their legal services in the case; the assignment provided specifically that the funds were to be taken out of the $40,000 cash bond on deposit with the clerk of the court. Before these funds were disbursed, however, the State filed a motion to attach the cash bond and apply it toward the fines and court costs incurred by the defendant. The trial court denied this motion, ordering that $12,500 be paid to the attorneys and that the remaining $27,500 be returned to William Clements, Sr.

The State appealed from this ruling to the Court of Criminal Appeals, which reversed the trial court's judgment, holding that the document signed by the defendant's father was a cash or deposit bond and thus could be applied against the fines and court costs. Because recent additions to the statutes governing bail bonds has caused some uncertainty in the law, and because this area of the law has not been addressed in some time, we granted the defendant's Rule 11 application.

### ANALYSIS

There are four different types of bail a defendant may post to obtain his or her release pending trial. The most basic of these "appearance bonds" is a cash or deposit bond, which is controlled by Tenn.Code Ann. § 40–11–118. That section provides, in pertinent part:

> Any defendant for whom bail has been set may execute the bail bond and deposit with the clerk of the court before which the proceeding is pending a sum of money in cash equal to the amount of the bail. Upon depositing this sum the defendant shall be released from custody subject to the conditions of the bail bond. Such bail shall be set as low as the court determines is necessary to reasonably assure the appearance of the defendant as required.

More common than the cash bond are the "secured" appearance bonds, which are controlled by Tenn.Code Ann. § 40–11–122. That section provides, in pertinent part:

> In lieu of the bail deposit provided for in § 40–11–118, any defendant for whom bail has been set may execute a bail bond which may be secured as provided in this section. The bail bond may be secured by:
> (1) real estate situated in this state . . .;
> (2) A written undertaking signed by the defendant and at least two (2) sufficient sureties, and approved by the magistrate or officer. Such sureties under this section shall not be professional bondsmen or attorneys; or
> (3) A solvent corporate surety or sureties or a professional bail bondsman as approved, qualified or regulated by §§ 40–11–101—40–11–144 and part 3 of this chapter.

The State argues that the bail bond executed in this case was a cash bond and that, as such, it may be applied to the fines and court costs incurred by the defendant. In support of this assertion, the State relies upon Tenn.Code Ann. § 40–11–121, which provides that "if a judgment for fine and court costs or either is entered in the prosecution of a cause in which a deposit had been made by the defendant, the deposit shall be applied to the payment of the judgment." The State also acknowledges that the cash actually belonged to the defendant's father. However, it argues that this fact is of no legal consequence, as the funds were deposited on the defendant's behalf and are treated as his property. The State cites *Kasper v. State,* 206 Tenn. 434, 333 S.W.2d 934 (1960)

and *State v. Ross*, 100 Tenn. 303, 45 S.W. 673 (1898) in support of this proposition.

In response, the defendant's father first argues that the document he signed is not a cash bond, but rather a secured bond. In support of this assertion, the father points out that he is listed as a "security" on the bond, whereas his son is listed as "principal." The father then contends that because sureties on secured bonds are not liable for fines and costs incurred by the defendant unless they specifically agree to be bound, the deposit should be returned to him. In support of this contention he cites Tenn.Code Ann. § 40–11–118(c), an amendment which was added to the statute in 1992.[1] That subsection provides as follows:

(c)(1) Whenever a *court's judgment* includes the requirement that the defendant pay a fine or cost, the court may require that the payment of the fine or cost be secured by surety bond or other appropriate undertaking if such defendant has a history of past due fines and costs. A parent, guardian, or other responsible party may be permitted to act as surety in order to guarantee the payment of the fine or cost.

(c)(2) Notwithstanding any other provision of law to the contrary, unless the surety executes a bond or agreement which specifically makes the surety liable for the fine, cost, or restitution, no surety shall be held liable therefor without the surety's consent.

Although § 40–11–118(c) is included in the section dealing with appearance bonds, and therefore might be thought to apply to the case before us, it actually has no such applicability. In fact, the subsection does not concern appearance bonds at all in the basic sense of that term. During discussion of the amendment in the spring of 1992, the bill's sponsor, Representative Frank Buck, stated as follows when asked to describe the bill's contents:

What you have frequently is a situation where the defendant applies for probation for instance, a suspended sentence or whatever, and there are substantial doubts as to whether this character is going to abide by the conditions of the probation. What this bill permits is, for instance, for him to bring in some responsible member of that community ... and that they will issue the bond to guarantee that he does provide the restitution or do what he's agreed to do. The law does not provide for that now. So what the bill does is that the judge then releases the individual on probation, and if the individual doesn't do what he's supposed to then the court can go after the surety to make sure the restitution is there.

When asked to further explain the bill, Buck stated:

The court can release the individual without any surety whatever if he chooses to do so, that's up to the judge. However, there's certain circumstances, whereby, for instance, if a relative would guarantee restitution—suppose the kid robs somebody, steals from them—if a parent or guardian would guarantee that the restitution is made the judge would be more likely to let the fellow out.

Discussion of House Bill 1889, Tape H–35 (March 19, 1992).

Therefore, the amendment seeks to make it easier for trial courts to offer probation or suspended sentences by enabling them to require that fines and/or costs incurred in the prosecution be secured; and it enables parents or other responsible parties to have the probation or suspended sentence granted by agreeing to act as a surety for the fines or costs. Because the amendment addresses post- and not pre-judgment proceedings, the undertaking referenced therein cannot be classified as an appearance bond, notwithstanding its confusing inclusion in the statute governing cash appearance bonds. Thus, because the document the defendant's father signed is certainly an appearance bond, the amendment does not apply to this case.

That the specific argument advanced by the father affords him no relief does not, however, necessarily mean that the judgment of the Court of Criminal Appeals must be affirmed. In fact, because a bail bond is nothing more than a type of contract, *State v. Adams*, 40 Tenn. 259 (1859), we believe that a proper resolution of this dispute depends

---

1. Acts 1992, ch. 946.

upon an application of the pertinent principles of contract law to the facts at hand—an analysis not undertaken by the court below.

 It is fundamental that a contract is enforceable only to the extent that it is assented to by the parties. *Price v. Mercury Supply Co.,* 682 S.W.2d 924 (Tenn.App.1984); *Roy McAmis Disposal Service, Inc. v. Hiwassee Systems, Inc.* 613 S.W.2d 226 (Tenn. App.1979); *In re Rudd,* 28 B.R. 591 (Bankr. M.D.Tenn.1983). Therefore, the funds deposited by the father can be attached to cover fines and costs incurred by the defendant only if it can be determined, from an objective standpoint, that the father assented to this possibility, either by signing the document or by some subsequent act. *Moore v. New Amsterdam Cas. Ins. Co.,* 199 F.Supp. 941 (E.D.Tenn.1961) (for contract to be valid there must be meeting of minds at time of execution or by later acquiescence or adoption).

We conclude that no objective assent on the father's part is present here. The bond signed by the father, entitled a "court appearance bond," purported to simply require payment of $40,000 to the State of Tennessee if the defendant did not appear in court at a specified date and time. There is absolutely no indication in the document that the father could be held liable for any fines and/or costs associated with the prosecution of his son. Thus, the father did not assent to pay fines and/or costs at the time the bond was executed. Moreover, the father cannot be said to have subsequently acquiesced to or adopted this liability, as he has steadfastly maintained throughout this litigation that he is not liable for the fines and costs incurred by his son.

Because the father did not agree to be liable for the fines and costs, either at the time the bond was signed or at any later time, the judgment of the Court of Criminal Appeals is reversed, and the judgment of the trial court reinstated.

BIRCH, C.J., and ANDERSON and REID, JJ., concur.

WHITE, J., not participating.