IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
September 4, 2019 Session Heard at Knoxville

## IN RE: RADER BONDING COMPANY, INC.

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Davidson County**
**No. 2016-C-1186    Mark J. Fishburn, Judge**

_____

**No. M2017-01687-SC-R11-CD**

_____

We granted this appeal to determine whether a surety remains obligated under a bond agreement entered on the defendant's arrest for driving under the influence second offense when a subsequent indictment charged the defendant with driving under the influence fourth offense. We conclude that sureties remain obligated pursuant to Tennessee Code Annotated sections 40-11-130(a)(1), -138(b) and this Court's holding in Young v. State, 121 S.W.2d 533 (Tenn. 1938). We hold, therefore, that the trial court did not abuse its discretion when it entered the final judgment of forfeiture against Rader Bonding Company, Inc. ("Rader") for the total amount of the bond and declined to grant Rader's motion to alter or amend. Accordingly, we reverse that portion of the Court of Criminal Appeals' decision holding that Rader should have been relieved from forfeiture on the $7,500 bond in connection with the defendant's DUI charge and affirm its conclusion that Rader remains obligated on the $2,500 bond in connection with the defendant's driving on a revoked license charge.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Reversed in Part and Affirmed in Part; Judgment of the Trial Court Reinstated**

CORNELIA A. CLARK, J., delivered the opinion of the court, in which JEFFREY S. BIVINS, C.J., and SHARON G. LEE, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; and Leslie E. Price, Senior Assistant Attorney General for the appellant, State of Tennessee.

Joel H. Moseley, Jr., Old Hickory, Tennessee, for the appellee, Rader Bonding Company, Inc.

# OPINION

## I. Factual and Procedural Background

On October 4, 2015, the defendant, Saul Aldaba[1] ("the defendant"), was arrested and charged with driving under the influence ("DUI") second offense, a Class A misdemeanor, and driving on a revoked license, a Class B misdemeanor. See Tenn. Code Ann. §§ 55-10-401–402(a)(2), 55-50-504(a)(1) (2012 & Supp. 2015). According to the arrest warrant affidavits, the defendant ran a red light and collided with another vehicle, causing injuries to both the driver of the other vehicle and the passenger in his own. The defendant showed multiple signs of impairment and performed poorly on field sobriety tasks. The arresting officer determined that the defendant's license had been revoked due to *two* prior DUI first offenses. But, for reasons not explained in the record, the warrant of arrest charged the defendant only with DUI *second* offense "due to a prior DUI 1st offense charge in Maury County . . . [,]" as well as driving on a revoked license. The magistrate in the general sessions court assigned each of the two charges a separate case number—GS742122 for the DUI second offense charge and GS742123 for the driving on a revoked license charge—and set bond at $7,500 for the DUI second offense charge and at $2,500 for the driving on a revoked license charge. That same day, Rader posted bond totaling $10,000 for both charges as surety for the defendant, evidenced by a "Criminal Appearance Recognizance" ("bond agreement") signed by Rader, the defendant, and the court clerk. Specifically, the bond agreement states:

> This case having been continued, thereupon the defendant . . . with Surety, Rader, his security, acknowledge themselves to owe and be indebted to the State of Tennessee in the Penal sum of $10,000 jointly and severally, to be levied of their goods and chattels, lands and tenements; to be void, however, on condition that the defendant doth make his personal appearance before the Court of Davidson County, having jurisdiction of his cause, from day to day, then and there to answer to the State of Tennessee on a charge of:

---

[1] The defendant is described as "Saul Aldaba-Arriaga," "Saul Aldaba Arriaga," "Saul Aldaba," and "Saul Arriaga" in different documents contained in the record. Because it appears that the defendant signed "Saul Aldaba" on the "Criminal Appearance Recognizance" form and on the forms waiving a preliminary hearing, we refer to him as "Saul Aldaba" for purposes of this opinion. Furthermore, because we have not been asked to address the underlying criminal case in this appeal, we are citing this case as In Re: Rader Bonding Company, Inc.

| CASE/ WARRANT # | CHARGE | BOND | COURT DATE / TIME |
|---|---|---|---|
| 1. GS742123 | 55-50-504 License-Driving on Revoked B MISD | $2,500.00 | 11/05/2015 8:30am |
| 2. GS74122 | 55-10-401 Driving Under the Influence – 2nd AMISD | $7,500.00 | 11/05/2015 8:30am |
| | Total: | $10,000 | |

The record does not reflect what, if anything, occurred on November 5, 2015. However, on January 26, 2016, the general sessions court bound the case over to the grand jury after the defendant waived a preliminary hearing. In July 2016, the Davidson County Grand Jury indicted the defendant on five counts, including DUI fourth or subsequent offense[2], a Class E felony, and driving on a revoked license, a Class B misdemeanor.[3] See id. §§ 55-10-401–402(a)(4), 55-50-504(a)(1) (2012 & Supp. 2015). According to court minutes, the defendant appeared on August 5, 2016, the date the case was set for arraignment, "being represented by counsel[,]" but the case was continued until September 16, 2016. When the defendant failed to appear on that date, the trial court entered a conditional judgment of forfeiture of the $10,000 bond against the defendant and Rader and issued a writ of *scire facias*[4] requiring the defendant and Rader

---

[2] The indictment reflects that the grand jurors considered four prior DUI convictions between May 2008 and April 2015 in Maury and Williamson Counties when indicting the defendant for "fourth or more offense of driving under the influence."

[3] The defendant was also indicted on reckless aggravated assault through the use or display of a deadly weapon to wit: a motor vehicle, a Class D felony; DUI per se with a blood-alcohol concentration of .20% or more, fourth or subsequent offense, a Class E felony; and failure to comply with the financial responsibility law at the time of an accident resulting in bodily injury or death for which the defendant was at fault, a Class A misdemeanor. See Tenn. Code Ann. §§ 39-13-102(a)(1)(B)(iii), (e)(1)(A)(v) (Supp. 2016); 55-10-401, -402(a)(4) (Supp. 2015); 55-12-139(c)(1), (c)(3)(A) (Supp. 2015). There is nothing in the record that reflects whether a new bond was set based on the additional charges returned in the indictment. In any event, this issue has not been raised and is not before us in this appeal.

[4] "The office of the writ of scire facias is to give the parties to the bond 'a plain and simple notice of the default and forfeiture, and the time when the sureties are to appear and show cause why judgment final should not be entered against them.'" Goldsby v. State, 19 S.W.2d 241, 242 (Tenn. 1929) (quoting State v. Frankgos, 85 S.W. 79, 80 (Tenn. 1905)).

to appear within 180 days to show cause why the judgment should not become final. See Tenn. Code Ann. § 40-11-202 (2018).[5]

Rader filed an answer to the *scire facias* and a motion to set aside the conditional judgment and to be relieved as the surety on March 10, 2017. As relevant to this appeal, Rader argued that the State abandoned the DUI second and driving on revoked charges because, "while case numbers GS742122 and GS742123 were bound over to the [g]rand [j]ury, there [was] . . . nothing to indicate that these charges were actually presented by the District Attorney for its investigation." Therefore, Rader contended that "the return of the indictment was not a continuation of the cases which began in [g]eneral [s]essions, but[, instead,] ' . . . was the beginning of a new proceeding.'" The State responded to these assertions by providing a file cover and indictment form worksheets that it alleged "clearly indicate[d] that GS742122 was the basis for Count[] 2[, the DUI fourth offense or more charge,] . . . and GS742123 was the basis for Count 4[, the driving on a revoked license charge]." Specifically, on the indictment worksheet for Count 2, "DUI 4th or more" was written in the space next to "[c]harge[,]" along with "GS742122[,]" which was written next to "WNO(S)" (i.e., warrant number(s)). Similarly, on the indictment worksheet for the driving on a revoked license charge, "GS742123" was written next to "WNO(S)[.]" According to the State, these forms reflected the "straight-forward procedure" of how warrants become counts for which a defendant is later indicted.

The trial court held a hearing and subsequently entered a written order on April 4, 2017, denying Rader's motion to set aside the conditional judgment and to relieve Rader as the surety, explaining, in part, that "[t]echnically, every indictment is a new criminal proceeding. Therefore, under [Rader's] . . . logic a new bond would have to be posted with every indictment since the underlying warrants that lead to the issuance of the indictment no longer have any force or effect." The court further noted there was "no evidence to suggest that the grand jury considered any facts outside of those that led to the issuance of the warrants initially[.]" The trial court entered a final judgment on March 30, 2017, in the amount of $10,000 plus costs against the defendant and Rader.

On May 1, 2017, Rader filed a motion to alter or amend the final judgment. In a supplemental memorandum of law in support of its motion, Rader again argued that, under the terms of the bond agreement, it was "only bound to produce the defendant on the charges arising out of the arrest in the General Sessions Court of Davidson County under warrant numbers GS742122 and GS742123" and that the indictment constituted a new criminal proceeding, "not a continuation of the prosecution that began in [g]eneral

---

[5] The text of the statutes currently in effect regarding bail bonds and the relevant forfeiture procedures are substantially the same as that of the statutes in effect at the time of the proceedings in the trial court. Thus, quotations and citations in this opinion are to the current statutes.

[s]essions." The trial court heard the motion on June 20, 2017, and, after noting that there was "nothing new or different about this case, [but, rather, that] it happens quite frequently," the trial court issued an order denying the motion on July 25, 2017.

Rader timely appealed, and in the Court of Criminal Appeals it argued that the trial court erred in entering the final judgment of forfeiture against it for $10,000 because:

> 1) the State abandoned its prosecution in general sessions court of the Defendant's charges which were subject to the bond agreement and the indictment constituted new proceedings to which the bond agreement did not apply; (2) the terms of the bonding agreement did not extend to the charges in the indictment; and (3) the State materially increased Rader's risk on the bond and breached its implied covenant of good faith and fair dealing.

State v. Aldaba-Arriaga (In re: Rader Bonding Company), No. M2017-01687-CCA-R3-CD, 2018 WL 6605931, at *3 (Tenn. Crim. App. Dec. 14, 2018). The State responded by arguing that, because the return of the indictment was not a disposition of the charges as described in Tennessee Code Annotated section 40-11-138, Rader was still obligated on the bond under section 40-11-130(a)(1). Id. at *5. A majority of the intermediate appellate court affirmed in part and reversed in part the trial court's judgment. The majority held that Rader remained obligated on the $2,500 bond set for the driving on a revoked license charge because the charge had not been disposed of under the statute and the defendant was indicted for the same charge. Id. at *7. However, the majority granted Rader relief from forfeiture on the DUI charge, reasoning that, "while the DUI second offense charge ha[d] not been disposed of under section 40-11-138(b)," "a bail bond is nothing more than a type of contract." Id. (quoting State v. Clements, 925 S.W.2d 224, 226-27 (Tenn. 1996)). Therefore, relying on contract principles, the court reasoned that "the plain terms of the bonding agreement limited Rader's obligations to the charge of DUI second offense." Id. The intermediate appellate court majority also concluded that the increased severity of the charge—from a misdemeanor to a felony—constituted a "unilateral alteration" by the State that increased Rader's risk and entitled Rader to discharge on the $7,500 bond. Id. One judge dissented and would have held that Rader remained obligated on the full amount of the bond "for all charges resulting from the criminal activity that formed the basis for warrants GS742122 and GS742123." Id. at *9 (Montgomery, J., dissenting).

The State then applied for permission to appeal to this Court pursuant to Tennessee Rule of Appellate Procedure 11, arguing that the majority's decision was inconsistent with both Tennessee Code Annotated sections 40-11-130(a)(1) and 138(b)(1) and our holding in Young v. State, 121 S.W.2d 533 (Tenn. 1938). We granted the State's application. Because Rader conceded during oral argument and in its brief that the Court of Criminal Appeals correctly held that it remained obligated on the $2,500 bond for the driving on a revoked license charge, we only address whether Rader remains obligated on the $7,500 bond.

## II. Standard of Review

Before turning to the merits of this issue, we must first clarify the standard of review. Tennessee statutes afford trial courts broad discretion in granting or denying a surety's request for relief from forfeiture. See Tenn. Code Ann. § 40-11-204(a) (2018) (providing that a judge of the general sessions, circuit, criminal, or supreme court may "do all and everything therein as they shall deem *just and right,* and consistent with the welfare of the state, as well as the person praying for relief . . . ." (emphasis added)). Unfortunately, language in the earliest decisions of this Court purported to constrict severely this statutory discretion. See State v. Frankgos, 85 S.W. 79, 81 (Tenn. 1905) (recognizing that the statutory language, now codified as Tennessee Code Annotated section 40-11-204, provides trial courts with authority to "do all and everything therein as they shall deem just and right" when determining whether relief should be granted on a forfeited recognizance, but nevertheless stating that trial courts should exercise that discretion "*only in extreme cases*, such as where the sureties cannot produce their principal in court on account of his death, or some other condition of affairs . . . which make it equally impossible for them to surrender him" (emphasis added)); see also Diehl v. Knight, 12 S.W.2d 717, 718 (Tenn. 1929); Wallace v. State, 269 S.W.2d 780, 784 (Tenn. 1954); Wallace v. State, 443 S.W.2d 656, 657 (Tenn. 1969). The Court of Criminal Appeals has correctly recognized the inconsistency between the statutory language and our own earlier decisions. See In re Paul's Bonding Co., 62 S.W.3d 187, 194 (Tenn. Crim. App. 2001) (acknowledging "the apparent contradiction in limiting a trial court's . . . discretion to make determinations in accordance with its conception of justice and right to a small number of circumstances"). We agree with the Court of Criminal Appeals that the language in Frankgos and its progeny is incongruent with the statute and hold that the Frankgos language should no longer be viewed as controlling.[6]

---

[6] Furthermore, to the extent any earlier cases suggest that the appropriate standard of review is de novo, they are overruled. See Wallace, 269 S.W.2d at 783-84.

- 6 -

Rather, we take this opportunity to clarify that Tennessee Code Annotated section 40-11-204(a) provides trial courts with discretion to relieve a surety from forfeiture. However, trial courts must exercise this discretion consistently with other statutory provisions, some of which have been enacted after the language of section 40-11-204(a) became a part of Tennessee law.[7] See, e.g., Tenn. Code Ann. §§ 40-11-130(a)(1), -138(b) (2018). Appellate courts should review a trial court's decision on a request for relief from forfeiture under the abuse of discretion standard. See Goldsby v. State, 19 S.W.2d 241, 242 (Tenn. 1929) (correctly stating that "the exercise of [a judge's] discretion will not be reviewed unless arbitrary"). A trial court abuses its discretion "when it applies an incorrect legal standard, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." State v. Jones, 568 S.W.3d 101, 127-28 (Tenn. 2019) (citing State v. Davis, 466 S.W.3d 49, 61 (Tenn. 2015)). To determine whether the trial court here applied the correct legal standard we must interpret several statutes. Questions regarding statutory interpretation are reviewed de novo with no presumption of correctness afforded to the lower court's findings. State v. Davis, 173 S.W.3d 411, 413 (Tenn. 2005) (citing State v. Denton, 149 S.W.3d 1, 17 (Tenn. 2004)). Applying these standards, we conclude, as explained hereinafter, that the trial court did not abuse its discretion in denying Rader relief from forfeiture.

### III. Analysis

#### *A. General Bail Principles*

In Tennessee, a criminal defendant's right to bail for noncapital offenses, is rooted in both our Constitution and in statute. Tenn. Const. art. I, § 15 (1870);[8] Tenn. Code Ann. § 40-11-102.[9] Here, the defendant availed himself of the constitutional right to

---

[7] Although we abrogate the language of Frankgos purporting to constrict this statutory discretion, we reaffirm that trial courts ordinarily should not grant relief from forfeiture simply because a defendant fails to appear and a surety makes ordinary, good faith—but unsuccessful—efforts to locate the defendant, as was the case in Frankgos. Indeed the defendant's nonappearance is the very risk a surety assumes in the contract. In re Sanford & Sons Bail Bonds, Inc., 96 S.W.3d 199, 202 (Tenn. Crim. App. 2002) (citing Holly J. Joiner, Note, Private Police: Defending the Power of Professional Bail Bondsmen, 32 Ind. L. Rev. 1413, 1422 (1999)).

[8] "That all prisoners shall be bailable by sufficient sureties, unless for capital offences, when the proof is evident, or the presumption great."

[9] "Before trial, all defendants shall be bailable by sufficient sureties, except for capital offenses where the proof is evident or the presumption great. After conviction, defendants are bailable as provided by § 40-11-113, § 40-11-143 or both."

pretrial bail by entering into the bond agreement with Rader.  See In re Sanford & Sons Bail Bonds, Inc., 96 S.W.3d 199, 202 (Tenn. Crim. App. 2002).

> The bail bond itself is a contract between the government on the one side and the criminal defendant and his surety on the other, whereby the surety assumes custody of the defendant and guarantees to the State either the appearance of the defendant in court or the payment of the full amount of the bail set by the court.

Id. (citing Indemnity Ins. Co. of N. Am. v. Blackwell, 653 S.W.2d 262, 264 (Tenn. Ct. App. 1983); 8 C.J.S. Bail § 4, at 12-13 (1988)).  Like other contracts, "the laws . . . existing at the time and place of [the contract's] execution[] enter into and form a part of" the bail bond contract.  Kee v. Shelter Ins., 852 S.W.2d 226, 228 (Tenn. 1993) (citing Robbins v. Life Ins. Co. of Va., 89 S.W.2d 340 (Tenn. 1936); Lunati v. Progressive Bldg. & Loan Ass'n, 67 S.W.2d 148 (Tenn. 1934); Webster v. Rose, 53 Tenn. 93 (1871); Cary v. Cary, 675 S.W.2d 491 (Tenn. Ct. App. 1984)).  Here, statutes actually provide the "*exclusive method* of enforcing the forfeiture of a bail bond."  9 David L. Raybin, Tennessee Practice: Criminal Practice & Procedure § 4:33 (2018) (emphasis added) (citing State v. Gann, 51 S.W.2d 490, 490 (Tenn. 1932) (noting "that the statutory remedy is exclusive")).  Therefore, we next consider the statutory procedures relating to forfeiture.

### B. Statutory Bail Forfeiture Procedure

A bond or recognizance is valid and binding on the defendant and his sureties "until the time allowed by law for the defendant to appeal a finding of guilt to the [C]ourt of [C]riminal [A]ppeals," provided "*there has not been a disposition pursuant to § 40-11-138(b).*"  Tenn. Code Ann. § 40-11-130(a)(1) (emphasis added).  A disposition occurs "if the charge against the surety's principal is disposed of by acquittal, agreement with the state, whether diversion or otherwise, or retirement."  Id. § 40-11-138(b)(1).  However, where a disposition has not occurred and a defendant fails to appear in court in accordance with the bail bond agreement, the trial court may enter a conditional judgment of forfeiture against the defendant and the defendant's sureties.  Id. § 40-11-201.  The court must then also issue a *scire facias* notifying the defendant and his sureties to show cause why the conditional judgment of forfeiture should not become final.  Id. § 40-11-202.  After 180 days, if the surety has not satisfied the court that it is entitled to relief, "the court may enter [a final] judgment [of forfeiture] for the state against the defendant and [his] sureties."  Id. § 40-11-139(b) (2018 & Supp. 2019).

A surety may be exonerated from forfeiture "by its surrender of the defendant to the court at any time before payment of the judgment of forfeiture." State v. Yussuf, No. M2008-01161-CCA-R3-CD, 2009 WL 3672823, at *2 (Tenn. Crim. App. Nov. 5, 2009) (citing Tenn. Code Ann. § 40-11-203), perm. app. denied, (Tenn. April 23, 2010); see also Tenn. Code Ann. § 40-11-132 (2018) (providing that a surety may, for good cause, "[a]t *any time*[,] . . . . surrender the defendant in their exoneration or the defendant may personally surrender to the officer" (emphasis added)). A surety also may seek relief from forfeiture by petitioning the trial court pursuant to Tennessee Code Annotated section 40-11-204(a).[10] In re Paul's Bonding Co., 62 S.W.3d at 193. That section provides:

> [T]he judges of the general sessions, circuit, criminal and supreme courts may receive, hear and determine the petition of any person who claims relief is merited on any recognizances [or bail bonds[11]] forfeited, and so lessen or absolutely remit the same . . . and *do all and everything therein as they shall deem just and right*, and consistent with the welfare of the state, as well as the person praying for relief. This power shall extend to the relief of those against whom final judgment has been entered whether or not the judgment has been paid, as well as to the relief of those against whom proceedings are in progress.

Tenn. Code Ann. § 40-11-204(a) (emphasis added). "Generally speaking, a trial court must afford a surety an opportunity to establish its suitability for relief . . . ." In re Sanford & Sons Bail Bonds, Inc., 96 S.W.3d at 204 (citing In re Paul's Bonding Co., 62 S.W.3d at 193; Indemnity Ins. Co. of N. Am., 653 S.W.2d at 264). The surety has the burden of establishing that it is entitled to relief. In re Paul's Bonding Co., 62 S.W.3d at 193 (citing State v. Martin/Liberty Bail Bond Co., No. 02C01-9710-CR-00402, 1998 WL 414713, at *2 (Tenn. Crim. App. July 24, 1998)).

---

[10] We recognize the existence of other statutes that impact whether forfeiture should be entered or relief should be granted to the surety and do not intend for this summary to limit those provisions. See e.g., Tenn. Code Ann. § 40-11-201(b) (2018); id. § 40-11-129; id. § 40-11-138(c). We here discuss only the statutes bearing on the facts and legal issue in this appeal.

[11] See State v. Robinson, No. E1999-00950-CCA-R3-CD, 2000 WL 1211316, at *2 (Tenn. Crim. App. Aug. 28, 2000) (concluding the term "recognizances" in § 40-11-204(a) does not limit application of the statute merely to instances where a defendant is released on his personal recognizance, but, rather, interpreting the statute to also include cases involving bail bonds).

### C. Application

Rader urges this Court to consider only contract law and the express language in the bond agreement to determine the extent of its obligation. We decline. We agree with Rader that a bond agreement is a type of contract. See State v. Spring, 176 S.W.2d 817, 817 (Tenn. 1944). However, "[i]t is well established that the laws affecting enforcement of a contract, and existing at the time and place of its execution, enter into and form a part of the contract." Dick Broadcasting Co., Inc. of Tennessee v. Oak Ridge FM, Inc., 395 S.W.3d 653, 668 (Tenn. 2013) (quoting Kee, 852 S.W.2d at 228). And, as already noted, statutes provide the exclusive method of enforcing the forfeiture of bail bonds. See Gann, 51 S.W.2d at 490. Thus, we turn first to the relevant statutes, rather than contract law, to resolve the issue in this appeal.

"'[W]ell-defined precepts'" guide this Court's interpretation of statutes. State v. Frazier, 558 S.W.3d 145, 152 (Tenn. 2018) (quoting Tenn. Dep't of Corr. v. Pressley, 528 S.W.3d 506, 512 (Tenn. 2017)). "Our role in statutory interpretation is to carry out legislative intent without broadening or restricting the statute beyond its intended scope." State v. L.W., 350 S.W.3d 911, 916 (Tenn. 2011) (citing State v. Marshall, 319 S.W.3d 558, 561 (Tenn. 2010)). The plain and ordinary meaning of the statutory language guides our understanding of legislative intent when the language is unambiguous. L.W., 350 S.W.3d at 916 (citing Marshall, 319 S.W.3d at 561). Words used in the statute "'must [also] be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose.'" Ray v. Madison Cnty., 536 S.W.3d 824, 832 (Tenn. 2018) (quoting Mills v. Fulmarque, Inc., 360 S.W.3d 362, 368 (Tenn. 2012)).

The State argues that the Court of Criminal Appeals incorrectly held that Rader be released from the $7,500 bond. Specifically, the State asserts that the intermediate appellate court's holding is inconsistent with Tennessee Code Annotated section 40-11-130(a)(1) and section 40-11-138(b), which together "govern the obligation and release of sureties[.]" Davis, 173 S.W.3d at 414. Under these two provisions, when a surety executes a bond or recognizance for a defendant's personal appearance in court on a "criminal *charge*," the bond or recognizance is valid and binding upon the surety and the defendant until the time allowed for appeal, unless "the *charge* against the surety's principal is disposed of by acquittal, agreement with the state, . . . or retirement." See Tenn. Code Ann. §§ 40-11-130(a)(1), -138(b)(1) (emphasis added). Black's Law Dictionary defines the term "charge" as "[a] formal accusation of an offense as a preliminary step to prosecution." Charge (noun), Black's Law Dictionary (11th ed. 2019), available at Westlaw BLACKS. The term "offense" is defined as "[a] violation of the law; a crime . . . ." Offense, Black's Law Dictionary (11th ed. 2019), available at Westlaw BLACKS. Rader argues that the term "charge" should be read strictly as describing only the offense expressly listed on the bond agreement—DUI second offense.

- 10 -

The State contends that the charge—DUI—remained the same and that it was merely the level of punishment that varied upon return of the indictment.

We agree with the State's position. The plain and natural meaning of the term "charge" in these statutes is not limited as Rader argues. A consideration of the criminal statute the defendant was charged with violating illustrates this point. Tennessee Code Annotated section 55-10-401, titled "[d]riving or in physical control of motor driven vehicle; under influence of substance affective ability to drive; alcohol concentration[,]" does not differentiate between second, third, or fourth offenses. Instead, it simply describes the offense of driving under the influence. Tennessee Code Annotated section 55-10-402, titled "[s]entencing; treatment programs[,]" on the other hand, in part outlines the various potential consequences for individuals who have been convicted of violating section 55-10-401 for the first, second, third, fourth, fifth, or sixth time. Each of these varying levels of punishment, however, are principally focused on one thing—the defendant's violation of Tennessee Code Annotated section 55-10-401.[12] See State v. Nash, 294 S.W.3d 541, 551 (Tenn. 2009) (explaining that "[t]he issue of whether a DUI constitutes a subsequent offense does not involve a separate 'charge.' Instead, it simply affects the length of the available sentence."); State v. Evans, No. E2000-00327-CCA-R9-CD, 2001 WL 501414, at *2 (Tenn. Crim. App. May 11, 2001) (providing that "there appears to be no dispute among the authorities" that "DUI, second or subsequent offense, is merely an enhancement of the punishment for DUI, and therefore *the defendant's prior DUI convictions are not elements of the offense*." (emphasis added)). Therefore, we conclude that the offense listed on the arrest warrant and on the bond agreement— "[d]riving [u]nder the [i]nfluence – 2nd [o]ffense"—and the charge returned in Count 2 of the indictment—"[f]ourth or more offense of driving under the influence"—are the same "charge" for purposes of determining Rader's liability under the bond agreement.[13] Rader remained obligated on the $7,500 bond because no disposition of the charge of DUI had occurred under Tennessee Code Annotated section 40-11-138(b). In other words, the charge in this case had not been disposed of "by acquittal, agreement with the state, whether diversion or otherwise, or retirement." Tenn. Code Ann. § 40-11-

---

[12] See, e.g., Tenn. Code Ann. § 55-10-402(a)(4) ("*Any person violating § 55-10-401*, upon conviction for a fourth offense, shall be sentenced as a felon to serve not less than one hundred fifty (150) consecutive days nor more than the maximum punishment authorized for the appropriate range of a Class E felony." (emphasis added)).

[13] In light of our conclusion that the charge remained the same, we also conclude that Rader's arguments that contract principles require construing the bond agreement as encompassing only DUI second offense and holding that the State unilaterally increased Rader's risk by obtaining the indictment charging DUI are without merit. Rader's argument that a capias should have been issued is waived because it was not listed as an issue in Rader's brief in this Court. Hodge v. Craig, 382 S.W.3d 325, 334-35 (Tenn. 2012).

138(b)(1). Instead, the subsequent indictment simply charged the defendant with DUI fourth offense as opposed to DUI second offense—increasing the potential punishment, but maintaining the underlying offense the defendant had been originally charged with — DUI. This is evidenced by the indictment worksheet submitted by the State illustrating how the DUI second offense charge, assigned case number GS742122, became Count 2 in the indictment, DUI fourth or more offense. Had the General Assembly intended for the circumstances of this case to constitute a disposition that would relieve a surety from its obligation under a bond agreement, it could have said so in the statute.[14] See State v. Lane, 254 S.W.3d 349, 353 (Tenn. 2008) (citation omitted) ("[W]hen interpreting statutory provisions[,] this Court follows the Latin maxim of '*expressio unius est exclusio alterius*, meaning "the expression of one thing implies the exclusion of all things not mentioned."'"); see also Coleman v. State, 341 S.W.3d 221, 241 (Tenn. 2011) (citations omitted) ("Just as we may not overlook or ignore any of the words in a statute, we must be circumspect about adding words to a statute that the General Assembly did not place there."). We hold that, under the plain language of the statutes, the charge remained the same and no disposition occurred that would have relieved Rader from its obligation on the $7,500 bond. Therefore, the trial court did not abuse its discretion in denying Rader's request for relief.

Furthermore, the trial court's determination that Rader remained obligated on the bond is consistent with this Court's holding in Young v. State, 121 S.W.2d 533 (Tenn. 1938). In Young, the defendant was charged in two separate cases with gambling offenses, and a surety posted bond for each. Id. at 533. As is relevant to this appeal, the defendant in Young was initially charged in the second case with a misdemeanor gambling offense. Id. at 534. He was later indicted in the second case for a felony gambling offense. Id. After the defendant failed to appear, the trial court entered a conditional judgment of forfeiture and issued a *scire facias* requiring the surety to show cause why the judgment should not become final. Id. The surety, similarly to Rader in this case, argued that "the principal in the bond had been bound over to answer a charge which was a misdemeanor, but that the grand jury had returned an indictment . . . charging the principal with a felony, and for this reason the surety was released on the

---

[14] This conclusion is also supported by the legislative history of this statute. See Rodriguez v. State, 437 S.W.3d 450, 453 (Tenn. 2014) (quoting State v. Casper, 297 S.W.3d 676, 683 (Tenn. 2009)) (providing that the Court may consider the history of the legislation when determining legislative intent). Prior to 2013, section 40-11-138(b) provided a non-exhaustive list that constituted dispositions for which a surety could be relieved of the bond obligation. See Tenn. Code Ann. § 40-11-138(b) (1990) ("A disposition shall include, but shall not be necessarily limited to . . . ."). A 2014 amendment deleted this subsection in its entirety and replaced it with the current language, which omits the qualifying language. Act of May 16, 2014, ch. 922, § 1, 2014 Tenn. Pub. Acts 1429, 1429. This alteration reflects the General Assembly's intent to provide an exhaustive list of events that now constitute dispositions. See State v. Gomez, 367 S.W.3d 237, 244 (Tenn. 2012) ("An amendment to a statute raises a presumption that the General Assembly intended to change existing law.").

bond." Id. This Court rejected the surety's argument, reasoning that the misdemeanor offense in the warrant and the felony offense in the indictment were not "unrelated in character or class[,]" but, rather, were "of a kindred class[.]" Id. at 534, 535. As a result, this Court held that the surety remained obligated on the bond and affirmed the judgment of the trial court denying relief from forfeiture. Id. at 535.

Here, as in Young, the defendant was initially charged with a misdemeanor offense and later indicted for a felony offense. Unlike Young, the misdemeanor and felony charge in this case are not merely "of a kindred class," they are the same charge— driving under the influence. The grand jury's return of the indictment charging the defendant with DUI fourth or more offense, as opposed to DUI second offense, does not reflect any difference in understanding about the defendant's conduct that led to the charge. It merely reflects that, based on the defendant's prior convictions, the severity of the punishment is altered. See Nash, 294 S.W.3d at 551 (explaining that "[t]he issue of whether a DUI constitutes a subsequent offense does not involve a separate 'charge.' Instead, it simply affects the length of the available sentence."). Although this Court decided Young prior to the enactment of the "Release from Custody and Bail Reform Act of 1978," and, thus, Tennessee Code Annotated sections 40-11-130, -138, "[w]e must presume that the General Assembly is aware of prior . . . decisions of the courts when enacting legislation." Carter v. Bell, 279 S.W.3d 560, 564 (Tenn. 2009) (citing Ki v. State, 78 S.W.3d 876, 879 (Tenn. 2002)). Had the Legislature intended to relieve a surety from liability under a bond agreement when a grand jury returns an indictment charging a felony version of the arrest offense it could have listed that circumstance as a "disposition" in the statute. See id. It has not done so. Therefore, because both the driving on a revoked license and DUI charges remained the same and were not resolved by a statutory disposition that would have relieved Rader of liability on the bond, we agree with the State that the trial court's entry of the final judgment of forfeiture against Rader was not an abuse of discretion and that the Court of Criminal Appeals erred in reversing the trial court's decision as it relates to the $7,500 bond amount.[15]

---

[15] We note that Rader was not without a remedy in this case and could have surrendered the defendant at any time after the indictment was issued and before he failed to appear on September 16, 2016. See Tenn. Code Ann. § 40-11-132.

## IV. Conclusion

For all of these reasons, the judgment of the Court of Criminal Appeals is reversed in part, affirmed in part, and the judgment of the trial court is reinstated. Costs of this appeal are taxed to Rader Bonding Company, Inc., for which execution may, if necessary, issue.

_____
CORNELIA A. CLARK, JUSTICE